Bernard M. Madeja and Daniel Davies *v.* Whitehall Township and Edward J. Galgon, Township Executive. Bernard M. Madeja, Appellant.

Submitted on briefs June 7, 1982, to President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Stephen C. Richman,* with him *Quintes D. Taglioli,* for appellant.

*Harry A. Kitey,* for appellee.

OPINION BY JUDGE WILLIAMS, JR., March 22, 1983:

Bernard M. Madeja has appealed from an order of the Court of Common Pleas of Lehigh County affirming his discharge from employment by the Township of Whitehall (Township).

As of April 25, 1979, Bernard Madeja was employed in the Traffic Control Division of the Township's Bureau of Public Works. On April 25, 1979, a piece of Township equipment, a payloader, was found to have a slashed tire. The damage was discovered while the payloader was parked in front of the Township garage. That same day, April 25th, the Assistant Township Executive[1] was told about the slashed tire; as a result, he convened a meeting of employees to discuss the property damage. At that meeting, which took place the same day the damage

---

[1] William Smith.

was discovered, the Assistant Township Executive asked Bernard Madeja and another employee, Daniel Davies, what they knew about the damaged tire. However, both men denied any awareness of the matter. The Assistant Township Executive then told the two men that they had been observed cutting the tire; he also told them they were dismissed. Subsequently, both Madeja and Davies received an official letter, dated April 25, 1979, confirming his dismissal. Each of the two employees was advised, by his letter, that his discharge was based on the report of his guilt in the tire slashing.

On June 4, 1979, the Township afforded Madeja and Davies a hearing pursuant to Section 553 of the Local Agency Law, 2 Pa. C. S. §553. At that hearing the Township presented the following evidence. The Assistant Township Executive testified that, upon being told about the tire on April 25, 1979, his inspection of the tire revealed a slash of approximately twenty or twenty-four inches long, and three or four centimeters deep. This witness further testified that, after receiving certain information about who slashed the tire, he called the meeting at which he confronted Madeja and Davies with the information and then fired them. The Assistant Township Executive also testified as to how the two men had proclaimed their ignorance of the tire damage when he first asked them about the matter. As an additional point of testimony, the Assistant Township Executive stated that, about two weeks after the tire incident, Mr. Davies admitted to him that he had cut the tire and offered to make restitution.

Also called as a Township witness was a Township mechanic, Thomas Evans. Mr. Evans was presented as an eyewitness to the actual slashing of the tire. This witness testified that he saw the incident

occur during the early afternoon of April 25, 1979, while he was standing about twenty yards from the payloader. According to Evans' testimony, Madeja and Davies came out of the Township garage together about 12:45 P.M. on the day in question, and then approached the payloader. Next, according to Evans, Madeja made a gesture toward the tire as if he was marking a spot on it, and Davies followed with taking out a knife and cutting the tire. Evans further testified that, when Davies cut the tire, Madeja applauded; and that the two men then left the scene together. This witness also stated that, immediately upon the departure of Madeja and Davies, he went to look at the tire and discovered a slash that had not been there before. Evans testified that he reported his observations to his supervisor.

On cross-examination, Thomas Evans stated that he had not seen anything in Madeja's hands during the incident described. Indeed, Mr. Evans acknowledged that he is nearsighted and was not wearing his glasses during the time about which he testified.

The Township's evidence also showed that the payloader, because of the slashed tire, could not be safely used on the road; and that it would cost the Township several hundred dollars to replace the tire.

Both Davies and Madeja testified in their own behalf. Davies admitted on direct examination that he had cut the tire with his penknife, but asserted that he had not intended to cut it. Davies also denied there had been any applause from Madeja when the tire was cut. Although Madeja conceded that he was present when the tire was cut, he too asserted that the damage was inflicted accidentally. Both men admitted, however, that they had done nothing to report the damage and had falsely denied their knowledge of it.

On July 11, 1979, the Township Executive,[2] who had conducted the evidentiary hearing, issued a letter stating that Madeja and Davies should be dismissed. That letter, which was addressed to the attorney for the two employees, also stated that findings of fact and conclusions of law would follow.

On September 11, 1979, pursuant to Section 752 of the Local Agency Law, 2 Pa. C. S. §752, Madeja and Davies appealed their dismissal to the Court of Common Pleas of Lehigh County. In that appeal, the two employees challenged the Township's adjudication of July 11, 1979 as being unsupported by substantial record evidence, as being an abuse of discretion, and as being contrary to the Local Agency Law. The last assignment of error was based on the fact that the adjudication, when issued, was not accompanied by written findings and conclusions. On the strength of those contentions, the two employees requested the trial court to order their reinstatement with back pay. On October 18, 1979, the Township responded by filing an answer, which included a representation that written findings and conclusions were being prepared and would be filed prior to any hearing on the employees' appeal.

The appeal to the Court of Common Pleas was scheduled to be argued on February 6, 1980. However, by a stipulation dated January 25, 1980, the parties agreed to continue the matter until March 12, 1980. That stipulation was approved by the trial court.

On February 29, 1980, the Township Executive issued and filed written findings and conclusions relative to the dismissal of Madeja and Davies. The findings were essentially an acceptance of the testimony presented by the Township's witnesses. Significant

---

[2] Edward J. Galgon.

among the findings were the following determinations: (1) that Madeja and Davies acted with intent to bring about the damage to the tire; (2) that Madeja marked the tire prior to the cutting and applauded after the act was done; (3) that the cutting of the tire made hazardous the use of payloader; and (4) that both Madeja and Davies failed to report the damage.[3]

As supporting conclusions, the Township Executive set forth that the conduct of Madeja and Davies in the tire incident was, among other things, a violation of Township rules and regulations governing personnel. Proscribed by those regulations are the following: conduct unbecoming an employee; waste of property; and conduct detrimental to the well-being of any Township employee or the community as a whole. The conclusions also opined that the conduct of the two employees amounted to criminal vandalism.

Based on the foregoing findings and conclusions, the Township Executive resolved that dismissal was the fitting discipline for Madeja and Davies.

On March 12, 1980, the trial court heard argument on the appeal. However, prior to a decision by the court, Daniel Davies withdrew his appeal. On June 5, 1980, the trial court entered an order dismissing Madeja's appeal. In so ordering, the trial court concluded that the record revealed no violation of constitutional or legal rights, and no violation of mandated procedure. The court also concluded that the Township's findings were supported by substantial evidence.

---

[3] In his findings, the Township Executive differed with some of the testimony as to the actual measurements of the cut. He determined that the cut was approximately six to twelve inches long, and about three-eighths of an inch deep. The tire had been put on view during the hearing.

In his appeal to our Court, Mr. Madeja argues, first, that there was not substantial record evidence to support the Township's adjudication as to him. He also reasserts that the Township's delay in submitting written findings and conclusions invalidated the adjudication and entitled him to reinstatement. We see no merit in either contention.

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *E.g., Acitelli v. Westmont Hilltop School District,* 15 Pa. Commonwealth Ct. 214, 325 A.2d 490 (1974). It must also be kept in mind that, in a case such as the one at bar, the weight and credibility of the evidence before the local agency was for the agency to determine. *Wilson v. Philadelphia Board of License & Inspection Review,* 16 Pa. Commonwealth Ct. 586, 329 A.2d 908 (1974); *see Civil Service Commission of Philadelphia v. Saladino,* 47 Pa. Commonwealth Ct. 249, 408 A.2d 178 (1979).

In our view, the Township's evidence in the instant case was sufficient to show, or generate the inference, that Madeja acted in concert with Daniel Davies to deliberately damage the tire on the payloader. The testimony of Thomas Evans, which the fact-finder could and did accept, reasonably supports the inference that Madeja not only designated to Davies where to cut the tire, but also applauded the cutting. The evidence-supported determination that Madeja was a partner in an act of vandalism against expensive Township property, and that he failed to report even the existence of the damage, provided ample basis for his discharge. Madeja's total conduct, however else it might be categorized, was certainly violative of the Township's personnel rules and regulations. The Township Executive, in the

exercise of his discretion, concluded that dismissal was the fitting sanction.[4]

As for the amount of time it took the Township to submit its written findings and conclusions, there is no basis in that delay for the relief the appellant seeks. True, Section 555 of the Local Agency Law, 2 Pa. C. S. §555, requires not only that adjudications be in writing, but also that they contain findings and reasons. Where, however, an appealed adjudication is not accompanied by written findings and reasons, the remedy is a remand to the agency to make such findings and reasons. *Action Alliance of Senior Citizens v. Philadelphia Gas Commission,* 45 Pa. Commonwealth Ct. 234, 406 A.2d 1155 (1979). In short, the presence of written findings and reasons goes to the reviewability of an adjudication, not to its validity. In the instant case, the need for a remand never arose; because the Township did submit its findings and conclusions almost two weeks prior to argument before the trial court.[5]

Our scope of review in this case is identical to that exercised by the court below. We must affirm the agency's adjudication unless we find that the adjudication is in violation of the appellant's constitutional rights, or is not in accordance with law, or that a procedural mandate of the Local Agency Law has been violated in the proceedings before the agency, or that

---

[4] The appellant has included a contention that the Township Executive failed to consider a penalty less than dismissal. It is not clear whether the appellant even raised that issue below. In any event, the findings state that dismissal was considered to be the "fitting" discipline under the circumstances; which suggests that the Township Executive was aware of and considered his options.

[5] It should be pointed out, that the appellant does not allege that any particular prejudice resulted from the Township's delay in filing its findings and conclusions.

a necessary finding of fact is not supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa. C. S. §754(b). In our view, none of the above infirmities are present in the instant case.

Accordingly, we affirm.

ORDER

AND Now, the 22nd day of March, 1983, the order of the Court of Common Pleas of Lehigh County dated June 5, 1980, at No. 79-C-2928, is affirmed.