Amram Enterprises, Inc., Appellant *v.* Port Authority of Allegheny County, Appellee.

Argued October 11, 1985, before Judges CRAIG and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Mary E. Bower,* with her, *Marvin J. Apple,* for appellant.

*Mark J. Murphy,* with him, *Robert M. Brown, Eckert, Seamans, Cherin & Mellott,* for appellee.

OPINION BY JUDGE CRAIG, November 26, 1985:

Amram Enterprises, Inc. appeals from an order of the Court of Common Pleas of Allegheny County which affirmed the resolution adopted by the Board of Directors of the Port Authority of Allegheny County denying Amram's application to operate a shared ride airport transfer service in Allegheny County.

Amram Enterprises, Inc. applied to the Port Authority of Allegheny County in February of 1983 for a permit to operate an airport transfer service[1] proposing to transport passengers by van and station wagon in both directions between the Greater Pittsburgh International Airport and areas in Allegheny County. The authority held public hearings on Amram's application in 1983 on March 16, April 26 and April 27 and made a stenographic record of those proceedings. On December 16, 1983, the board of di-

---

[1] The Public Utility Commission defines "airport transfer service. Common carrier service for passengers rendered on a non-exclusive basis which originates or terminates at an airport." 52 Pa. Code §29.13(5). In its resolution and opinion, the authority adopted this definition for the purposes of Amram's application because it had not previously established a transportation classification of "airport transfer service."

rectors of the authority adopted a resolution and accompanying opinion denying Amram's permit application.

The Court of Common Pleas of Allegheny County affirmed the decision of the authority, holding that the authority's decision was in accordance with law, violated no constitutional right of the appellant, was consistent with the procedure required of the appellee and was supported by substantial evidence.

We affirm the conclusion reached by the court of common pleas.

The Second Class County Port Authority Act[2] (Port Authority Act) grants the authority exclusive jurisdiction over buses, limousines and other *nonexclusive* forms of transportation within the authority's service area. Regarding exclusive forms of transportation, that is, taxicabs, the Public Utility Commission continues to have full jurisdiction in Allegheny County.[3]

---

[2] Act of April 6, 1956, P.L. (1955) 1414, §§1-13, *as amended*, 55 P.S. §§551-563.5.

[3] Section 13.1 of the Act of April 6, 1956, 55 P.S. §563.1, states:
> Upon the recording of the plan of integrated operation, any law to the contrary notwithstanding, the authority shall have exclusive jurisdiction with respect to all matters regarding [a] its transportation system within the service area as set forth in the plan of operation or as from time to time changed as in this section provided.

The legislature expressly defined the term "transportation system":
> (13) The term 'transportation system' shall mean all property, real and personal, useful for the transportation of passengers for hire, . . .: *Provided, That such terms shall not include taxicabs or bus companies, the main purpose of which is the transportation of children to and from school.*

Section 2 of the Act of April 6, 1956, 55 P.S. §552 (emphasis added). *See Port Authority of Allegheny County v. Pennsylvania Public Utility Commission*, 494 Pa. 250, 431 A.2d 243 (1981).

The Port Authority Act further vests in the authority the power to "determine by itself exclusively, the facilities to be operated by it, and the services to be available to the public." Section 3 of the Act of April 6, 1956, 55 P.S. §553(b)(9).

Because the appellee authority is a local agency[4] as that agency is defined by the Local Agency Law, 2 Pa. C. S. §101, our scope of review, like that of the court of common pleas, is specifically defined by the Local Agency Law.

> (b) Complete record.— . . . After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

2 Pa. C. S. §754(b).

The appellant cites *Port Authority of Allegheny County v. Scott,* 62 Pa. Commonwealth Ct. 631, 437 A.2d 502 (1981), suggesting that, upon review, this court must consider whether the authority has manifestly and flagrantly abused its discretion.

---

[4] The Local Agency Law defines a "local agency" as "a government agency other than a Commonwealth Agency." 2 Pa. C. S. §101. In turn, the Law defines a "government agency" as "any Commonwealth agency or any political subdivision or municipal or other local authority . . . ." *Id.*

The Second Class County Port Authority Act declares that by the Act, "[t]here are hereby created bodies . . . which shall . . . exercis[e] the public powers of the Commonwealth as an agency thereof." Section 3 of the Act of April 6, 1956, 55 P.S. §553.

In *Porter v. Board of School Directors of the Clairton School District*, 67 Pa. Commonwealth Ct. 147, 156, 445 A.2d 1386, 1389-90 (1982), where, as here, the appellant contended as a basis for appeal that the school district had abused its discretion, we refused to apply that standard of review and instead followed the express language of the Local Agency Law, 2 Pa. C. S. §754(b). We do the same now.

On appeal to this court, Amram does not contend that the adjudication of the authority violated Amram's constitutional rights, nor does it contend that the authority committed errors of law, nor that the authority violated the procedures which are mandated by Local Agency Law. We therefore consider only Amram's contention that substantial evidence does not support the findings of fact made by the authority.

Amram claims that no substantial evidence exists to support the authority's finding that Amram failed to produce evidence "concerning a true shared, nonexclusive ride requiring a prior reservation."[5] In effect, Amram's claim appears to be that the authority has capriciously disregarded evidence presented by Amram on the question of whether Amram's proposed airport transfer service is of a shared and nonexclusive nature.

Despite this contention, Amram fails to indicate any evidence of record which establishes that its airport transport service is nonexclusive. This court can only review the evidence on which the authority relied, to determine if there is evidentiary support for the authority's findings. We note that we have consistently held that the weight and credibility of the

---

[5] The authority also found that "it is impossible to determine the difference between its (Amram's) proposed and actual service and the service offered by taxicab companies."

evidence before the local agency are for the agency to determine. *Madeja v. Whitehall Township*, 73 Pa. Commonwealth Ct. 34, 457 A.2d 603 (1983).

The authority's opinion notes that Amram's dispatcher testified extensively concerning "Amram's ability to fill special needs for persons with extra or unusual luggage, small children, wheelchairs and other problems."

Perhaps because of Amram's willingness to be flexible in regard to customer needs, as well as its willingness to comply with any standards, requirements or limitations which the authority might choose to place on carriers receiving permits for shared ride airport transfer services, Amram failed to set forth a plan of shared nonexclusive ride service sufficient to persuade the authority that this service would not provide exclusive service—comparable to a taxicab—over which the authority has no power to issue permits.

Some of Amram's witnesses, such as those representing hotels in the Pittsburgh area, indicated interest in using Amram's proposed service through the shared, nonexclusive ride mode—namely, if Amram were to run a service between the witness' hotel and the airport on a regularly scheduled basis.

However, the witnesses who had used Amram's previous transport service in an individual capacity described a type of airport transfer service similar to taxicab service. Amram did not make clear whether, under its new proposal for airport transfer, it would transport individuals to and from locations of the individual's choosing, indicating a non-shared, exclusive transfer service, or whether the individuals would be transported to and from a central location designated by Amram and run on a regular schedule, indicating a shared, nonexclusive ride service.

The testimony of individuals called as witnesses by Amram supports the authority's further finding that "for the most part Amram operates in an exclusive ride mode rather than as a shared ride service." One witness testified that he had used Amram's service to transport him quickly and directly to and from his meetings. He testified that he was always the only passenger and that while he could probably use a taxicab, he preferred Amram because of the lower cost. Clearly, according to this witness' testimony, the service offered by Amram differed from that of a taxicab in cost only and not in the nature of service offered.

Another individual testified that she preferred Amram's service to that of a taxicab because of her inability to hire a taxicab from downtown after arriving there in an Airlines Transportation Company[6] bus. She also objected to the cost of taxicab service from the airport to her home. Transport by Amram and transport by a taxi differ in terms of availability of service and cost of service, not in the nature of the service itself.[7] Based on this evidence, we conclude

---

[6] Two companies, Airlines Transportation Company and Airport Limousine Service, Inc., currently transport passengers between the Greater Pittsburgh International Airport and hotels in and around the City of Pittsburgh. These companies predate the recording of the Allegheny County Port Authority plan of integrated operation, and therefore these companies operate under certificates of public convenience granted by the Public Utility Commission.

The Port Authority Act permits that arrangement, providing, "[t]he authority may, also by agreement with an existing transportation system now servicing the said service area, permit a continuation of such services where, in the opinion of the authority, such privilege will serve the purpose for which the authority was created." Section 13.1 of the Act of April 6, 1956, 55 P.S. §563.1.

[7] Part of Amram's proposal to the authority consisted of letters from past customers who endorsed the services which Amram provided. One letter stated in part, "I had often wondered why,

that these findings of fact made by the authority, necessary to support its adjudication, are supported by substantial evidence.

Amram next contends that substantial evidence does not support the three reasons advanced by the authority for denying Amram's application. Amram phrases these reasons as:

1. The authority states that it is not satisfied that the type of service previously offered by Amram would be appropriate for the needs of Allegheny County residents in getting to and from the airport.

2. Both Airlines and Limousine [transportation companies] are presently engaged in litigation before PUC seeking to retain the transportation rights which they contend the certificates give them.

3. The problem requires further study.

However, nowhere in the authority's resolution nor in the accompanying opinion does the authority express any reservations regarding the desirability of the transport service which Amram claims that it would provide. To the contrary, the authority states "[w]e commend the applicant on its efforts to apply the concepts of demand responsive service to an area in which it appears there is a market seeking new, innovative and less expensive alternatives."

Amram construes the authority's statement that "the authority will continue to examine the need for a true shared ride airport transfer service," as a finding that Amram has insufficiently presented evidence of need for a shared ride airport transfer service. Even if we assume that Amram has established the

---

in contrast to many other cities, Pittsburgh did not have the benefit of a limosine [sic] transportation service such as yours that would pick up and deliver passengers at their homes."

need for a shared ride airport transfer service, the plain language of the Second Class Counties Port Authority Act states that "[t]he authority shall determine by itself exclusively, the facilities to be operated by it and the services to be available to the public." Section 3 of the Act of April 6, 1956, 55 P.S. §553(b)(9).

As the court of common pleas noted, this language indicates that the authority certainly has the power to grant a permit for a shared non-exclusive airport transfer service if the service proposed was conclusively that. However, the authority's exclusive, but limited jurisdiction prevents it from granting such an application where the authority has determined that the applicant's proposed service may be, at least partially, a nonshared, exclusive taxicab service, for which the authority has no power to issue a permit of operation.

We therefore affirm the conclusion of the Court of Common Pleas of Allegheny County.

ORDER

Now, November 26, 1985, the order of the Court of Common Pleas of Allegheny County at No. SA 64 of 1984, dated September 10, 1984, is affirmed.