WIEAND, Judge:
Does an architect who has been hired to prepare construction drawings and a foundation design for a proposed warehouse have a duty to warn construction workers of the presence of an existing, overhead power line? The trial court held that no such duty existed in the absence of a contractual assumption thereof. We agree that this is a correct statement of the law. Under the facts of this case, therefore, we will affirm the summary judgment entered in favor of the architect in this action to recover damages on behalf of workmen who were killed or injured when the scaffolding which they were moving came into contact with the power line.
In 1988, Dauphin Distribution Services Company (Dauphin) contracted with Shane Construction, Incorporated (Shane) to construct a distribution facility in Hampden Township, Cumberland County. Pursuant to the terms of the agreement, Shane was responsible for supervising all construction activity. Shane was also charged with initiating, maintaining and supervising safety precautions associated with the construction work. According to the express terms of the agreement, the architect was not to be responsible for and was not to have control over construction activities or safety measures. By separate agreement, Shane contracted with Scholl, Sowers & Associates, Incorporated (Scholl), an architectural firm, for the preparation of the project’s construction drawings and founda *488 tion design. Pursuant to the terms of this agreement, Scholl’s responsibility was limited to the preparation of documents.
R.A. Marker & Sons Steel Erector Company (Marker) was one of the subcontractors involved in the construction project. On December 8, 1988, Marker employees, Richard Boaz and Donald Frampton, Sr., were involved in an accident while installing metal siding on the building which was then under construction. The accident occurred when they allowed the scaffolding which they were maneuvering around the corner of the budding to come into contact with an overhead, uninsulated power line. As a result of the contact, Boaz sustained severe injuries and Frampton was electrocuted. Boaz and June Frampton, the administratrix of Donald Frampton’s estate, commenced separate actions against Dauphin, Pennsylvania Power & Light Company, Shane and Scholl. The two actions were subsequently consolidated by stipulation of the parties.
With respect to Scholl, the plaintiffs alleged that the defendant had been negligent in failing to warn workers of the hazards involved in working in close proximity to a power line and in failing to take any steps to minimize the danger posed to the workers by the power line. After the pleadings had been closed and limited discovery conducted, Scholl moved for summary judgment. The trial court granted Scholl’s motion, and the plaintiffs appealed.
A motion for summary judgment may be granted only if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Marks v. Tasman, M.D., 527 Pa. 132, 134, 589 A.2d 205, 206 (1991), quoting Pa.R.C.P. 1035(b). In determining whether summary judgment has been properly granted, a reviewing court must examine the record in the light most favorable to the nonmoving party and resolve all doubts against the moving party. E.J.M v. Archdiocese of Philadelphia, 424 Pa.Super. 449, 453, 622 A.2d 1388, 1390 (1993). Summary judgment, is proper only in cases where the right is clear and free from *489 doubt. Marks v. Tasman, M.D., supra 527 Pa. at 134-135, 589 A.2d at 206.
In order to prove a cause of action for negligence, a plaintiff must show
the existence of a duty or obligation recognized by law; a failure on the part of the defendant to conform to that duty, or a breach thereof; a causal connection between the defendant’s breach and the resulting injury; and actual loss or damage suffered by the complainant.
Orner v. Mallick, 515 Pa. 132, 135, 527 A.2d 521, 523 (1987). See also: Pittsburgh Nat’l Bank v. Perr, 431 Pa.Super. 580, 583-85, 637 A.2d 334, 336 (1994); Reilly v. Tiergarten, Inc., 430 Pa.Super. 10, 14-16, 633 A.2d 208, 210 (1993). Absent a duty of care, however, a negligence claim cannot be sustained. Zanine v. Gallagher, 345 Pa.Super. 119, 123, 497 A.2d 1332, 1334 (1985).
As a general rule, an architect may be held liable only if he fails to exercise the ordinary skill of his profession and this results in the erection of an unsafe structure which causes injury to another who is lawfully on the premises. 5 Am. Jur.2d Architects § 25. See also: Annotation, Architect’s Liability for Personal Injury or Death Allegedly Caused by Improper or Defective Plans or Design, 97 A.L.R.3d § 455 (1980). Pennsylvania courts, consistently therewith, have refused to impose a duty on an architect to protect workers from hazards on a construction site in the absence of an undertaking by the architect, either by contract or course of conduct, to supervise and/or control the construction and to maintain safe conditions on the construction site. Young v. Eastern Engineering and Elevator Co., Inc., 381 Pa.Super. 428, 433-434, 554 A.2d 77, 79 (1989). See also: Marshall v. Port Authority of Allegheny County, 106 Pa.Commw. 131, 525 A.2d 857 (1987), aff'd, 524 Pa. 1, 568 A.2d 931 (1990) (engineer has no duty to worker injured during bridge demolition absent evidence he was responsible for assuring safe working conditions). Compare: Heath v. Huth Engineers, Inc., 279 Pa.Super. 90, 420 A.2d 758 (1980) (engineer liable for negligence where contract required engineer to supervise work, periodi *490 cally inspect it, and assist in safeguarding owner against defects by contractor).
In the present case, Scholl was not hired to supervise construction or to act as the owner’s representative on the construction site. Scholl was employed by the general contractor to do design work and to prepare certain drawings. Neither Scholl’s contract with Shane, nor Shane’s contract with Dauphin can be construed as imposing upon Scholl a duty to supervise the construction work or be responsible for the safety of workers.
Similarly, there is no suggestion that Scholl undertook, by course of conduct, to supervise the construction work or provide for the safety of workers. Therefore, under all the existing law, it is clear that the architect did not have a duty to warn employees of a subcontractor regarding hazardous conditions which existed on the construction site. See: Young v. Eastern Engineering and Elevator Co., Inc., supra; Marshall v. Port Authority of Allegheny County, supra.
Appellants argue that Young is distinguishable on its facts in that it involved a hazard created by the construction work itself and not a hazardous condition which existed prior to the commencement of construction. The overhead line, however, was as readily visible to the subcontractor and his workmen as it was to the architect. The architect had no greater knowledge of the hazard caused by an overhead electric power line than the contractor, the subcontractor or any of the workmen.
Although our research has disclosed no Pennsylvania appellate court decisions which are on all fours factually with the instant case, in Patin v. Industrial Enterprises, Inc., 421 So.2d 362 (La.App.1982), the facts were similar. There, a construction worker was killed when a section of gutter which he had been holding came into contact with an uninsulated electric line. The decedent’s spouse commenced an action against various parties, including the engineer who had drawn the plans for the building which had been under construction at the time of the accident. The plaintiff alleged that the engineer had been negligent in drawing plans for a building *491 situated in close proximity to an electrical servitude, in failing to warn of the close proximity of the wires and in failing to provide instructions for safe construction in an area containing uninsulated wires. The court observed that the workers were aware of the presence of the wires and that the engineer, who had been hired only to draw up the plans for the building, had no responsibility for construction supervision. Therefore, the court held that the engineer had no duty to warn the workers of the presence of the wires or to provide instructions for safe construction in that area and affirmed the entry of summary judgment in favor of the engineer.
A California court has held that an architect may be found negligent for failing to delineate on plans, which he prepared, an underground high voltage line of which the architect had knowledge and which was located where an excavation was to be made. See: Mallow v. Tucker, Sadler & Bennett, Architects and Engineers, Inc., 245 Cal.App.2d 700, 54 CalRptr. 174 (1966). See also: Chastain v. Atlanta Gas Light Co., 122 Ga.App. 90, 176 S.E.2d 487 (1970) (where architect is alter ego of owner on the job site, his failure to indicate the location of underground gas utility on design plans precludes the entry of summary judgment in his favor). But compare: Kaltenbrun v. City of Port Washington, 156 Wis.2d 634, 457 N.W.2d 527 (1990) (architect had no duty to perform subsoil tests or design safety features for site’s ingress and egress routes to assure that routes would withstand weight of construction equipment). In all of these cases, however, the hazard was not readily observable to the contractor and his employees.
In the instant case, as in Patin v. Industrial Enterprises, Inc., supra, the electric power line was above ground and was readily visible. It was also identified on site plans which had been prepared by the engineer. The architect had no superior knowledge regarding the location of the electric line. The architect, as we have observed, had not been hired to supervise the construction work and had no contractual obligation to oversee the manner in which the several contractors and their employees performed their work. He also had no duty to determine whether the electric power line was properly insu *492 lated. Absent a greater duty imposed by contract or course of conduct, an architect’s liability is limited to instances of unsafe or defective design of a structure. An architect, in the absence of a duty specially imposed by contract or course of conduct, has no duty to take affirmative action to protect workers from hazards on the job site which are either known or readily ■visible.[1]
Here, it is clear that Scholl did not contractually assume any duty to supervise the construction work or provide for the safety of workers. The responsibility for safety on the job site was fixed by contract on the general contractor; and the contract between contractor and architect required the architect only to design the foundation and prepare construction drawings. It follows that Scholl had no duty to take affirmative steps to minimize the risk of coming into contact with a visible overhead power line during the course of construction.[2]
The summary judgment entered in favor of the appelleearchitect is affirmed.
McEWEN, J., files a dissenting statement.

. The author of the dissenting opinion relies on decisions by the Supreme Court in Stark v. Lehigh Foundries, Inc., 388 Pa. 1, 130 A.2d 123 (1957) and Janowicz v. Crucible Steel Company of America, 433 Pa. 304, 249 A.2d 773 (1969). In Stark, however, recovery was allowed against the owner of the plant and the power company which supplied the power; and in. Janowicz, the action was against the owner of the trestle on which the plaintiff was working when scaffolding came into contact with an electric power line. In neither of these cases did the Court consider or discuss the potential liability of an architect who was employed only to prepare drawings and who neither had nor exercised control over the work site. We conclude, therefore, that neither decision is helpful in deciding the issue of first impression which has been presented by this appeal.

. We find it unnecessary to determine in this case whether the contract between the general contractor and the architect violated the provisions of 49 Pa.Code § 9.165. In any event, there was no duty on the architect under the facts of this case to protect workers from coming into contact with the obvious power line.