## Boyanoski v. Gould Inc.

C.P. of Lackawanna County, no. 93-CV-2077.

*John Barry Beemer,* for plaintiff.
*Mark A. Lockett,* for defendant Gould Inc.
*David R. Beane,* for defendant NTH Consultants Ltd.
*Leigh Bechtle,* for additional defendant Synergist Inc.

NEALON, *J.,* September 27, 1999—Additional defendant, Synergist Inc., has filed a motion for summary judgment with respect to the third party complaint filed against it by defendant NTH Consultants Ltd., and the cross-claims for contribution and indemnity presented against it by defendant, Gould Inc. For the reasons set forth below, the motion for summary judgment will be denied.

## I. FACTUAL BACKGROUND

Plaintiff, Paula Boyanoski, has filed a wrongful death and survival action in her capacity as the executrix of the estate of her brother, Patrick Kane. In this toxic tort litigation, Boyanoski maintains that Kane was exposed to lead and other hazardous substances while employed as a landscaper at the Marjol Battery & Equipment Company Superfund Site in Throop between April 1989 and November 1989, as a result of which Kane was diagnosed with myelodysplastic syndrome and sideroblastic anemia on April 17, 1991, and eventually died on August 10, 1992.

By way of brief background, defendant, Gould Electronics Inc., is the current owner of the Superfund Site, having purchased the 43-acre site from the now defunct Marjol Battery & Equipment Company in May 1980.

On April 11, 1988, Gould entered into an emergency consent agreement and order with the Environmental Protection Agency by virtue of which Gould agreed to stabilize contaminated soils on site and to remediate off-site residential properties. The consent order also required Gould to develop a site health and environmental response plan to protect all subcontractors and employees working on the project from exposure to hazardous substances. The SHERP allegedly mandated certain OSHA training for all site employees regarding safety and health hazards that were present, the use of protective equipment and clothing, and the need for and availability of certain medical surveillance.

Gould hired NTH Consultants Ltd. as the environmental engineering firm to develop a plan for on-site stabilization and off-site soil remediation and further retained Gilarde Environmental Management Inc. to implement the work plan. Gilarde subcontracted with Ernie Weston Landscaping Inc. to seed contaminated soil on site and to plant trees and shrubbery on nearby residential properties that had been designated for soil removal. In that regard, Kane was employed by Weston as a landscaper at the Superfund Site between April 1989 and November 1989.

Boyanoski contends that Gould, NTH and Gilarde are liable for Kane's wrongful death caused by his exposure to lead and other hazardous substances at the Superfund Site. Specifically, Boyanoski asserts that Kane was never provided with the required OSHA training, nor was he furnished with the mandated protective clothing and blood screenings or medical surveillance. Boyanoski maintains that as a consequence, Kane simply wore a T-shirt, shorts and sneakers while working with toxic soil.

NTH has joined Synergist Inc. as an additional defendant on the grounds that NTH had retained Synergist as a subcontractor to draft and prepare the SHERP required by the consent order.

The SHERP that was prepared by Synergist in May 1988 creates a "health and safety committee" comprised of personnel from NTH, Gilarde and Synergist. (See Synergist's exhibit "A," §1.2.1, pp. 1-2.) Section 1.2.1 of the SHERP distinctly provides that the health and safety committee "is responsible for the development, amendment, and implementation of the SHERP for all remedial activities conducted at the Marjol Battery site." (*Id.*) Section 1.2.5 identifies the specific responsibilities of Synergist in its capacity as the "project health and safety coordinator" and states:

"The primary responsibilities of the Synergist project health and safety coordinator are to help develop and revise the SHERP and to oversee the implementation of the SHERP on the site. Specific duties of the project safety coordinator are:

"—Work directly to develop and revise the SHERP;

"—Perform a pre-investigation health and safety inspection of the site;

"—Ensure that the SHERP addresses site-specific hazards and contains a safety plan;

"—Establish the appropriate level of protection required by personnel working on the site;

"—Ensure that the field team is trained in the site-specific health and safety procedures;

"—Review the health and safety training and medical monitoring records of subcontractor personnel;

"—Ensure that [Gilarde] is properly trained and thoroughly versed in the SHERP;

"—Ensure that [Gilarde] is properly trained in the use and selection of field monitoring and personal protective equipment;

"—Monitor records of worker exposure to toxics (if materials on the site are known, or suspected, to produce exposure);

"—Ensure proper site safety record keeping and accident reporting;

"—Maintain the health and safety equipment inventory;

"—Supervise health and safety performance of the staff and maintain site safety records;

"—Arrange medical attention in the event of an accident;

"—With the project engineer, correct work errors and conditions that may result in injury or exposure to hazardous substances;

"—With the project engineer, ensure that at least one person trained in basic first-aid and cardiopulmonary resuscitation is present on the site during all field activities." (*Id.,* pp. 1-4 to 1-5.)

The first, second, third, sixth, ninth, tenth and eleventh duties delineated in section 1.2.5 relate to the formulation of the SHERP and the subsequent monitoring of records and inventory by Synergist. The fourth, fifth, seventh, eighth, twelfth, thirteenth, fourteenth and fifteenth duties concern Synergist's obligation to establish and ensure certain safety training, protective equipment, work site precautions, and remedial measures to avoid toxic exposure.

The deposition testimony of Synergist's president, Terrence Shannon, reflects that Synergist maintained an active role in assuring work site safety pursuant to sec-

tion 1.2.5 of the SHERP. Specifically, Mr. Shannon attested:

"I would visit the site approximately once a week, and walk around and inspect the site and operations going on on the site for purposes of noting any issues that were not consistent with the items specified in the SHERP. And I would then prepare a report based upon my observations, and I would submit that to the on-site health and safety officer and the project engineer." (See Terrence A. Shannon deposition dated December 19, 1997, p. 13.)

Mr. Shannon's account was corroborated by the deposition testimony of the project manager, Ms. Barbara Forslund, who confirmed that Synergist personnel would visit the Marjol site on a weekly basis to determine whether the activities were being conducted in accordance with the SHERP and to review any instances of noncompliance with Gilarde. (See Barbara Forslund deposition dated December 19, 1997, p. 54.)

Synergist has filed a motion for summary judgment seeking the dismissal of all claims for contribution and indemnity on the grounds that "there is an absence of duty, as a matter of law, as to Synergist due to the contractual terms and provisions of the safety, health and emergency response plan." (See Synergist motion for summary judgment, p. 2.) Synergist posits that it merely maintained a passive, records auditing role which cannot serve as a basis for a legal duty in a negligence case. Gould and NTH counter that Synergist's "involvement with respect to safety issues was of a direct sort which required Synergist to be on-site and perform weekly safety audits." (See *e.g.,* Gould's brief in opposition, p. 10.) The parties have briefed their respective positions, and following the completion of oral argument on September 21, 1999, this issue became ripe for disposition.

## II. DISCUSSION

### (A) *Standard of Review*

Under Pa.R.C.P. 1035.2, a party may move for summary judgment after the relevant pleadings are closed whenever there is no genuine issue of any material fact which could be established by additional discovery or if, after the completion of discovery, an adverse party who bears the burden of proof has failed to produce evidence of essential facts so as to warrant the submission of the issue to a jury. *Fazio v. Fegley Oil Co. Inc.,* 714 A.2d 510, 512 (Pa. Commw. 1998); *Rivera v. Barone,* 99 Lacka. Jur. 130, 133 (1998). In determining whether to grant summary judgment pursuant to Pa.R.C.P. 1035.1-1035.4, a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *McCarthy v. Dan Lepore & Sons Co. Inc.,* 724 A.2d 938, 940 (Pa. Super. 1998); *Harman on behalf of Harman v. Borah,* 720 A.2d 1058, 1061 (Pa. Super. 1998). Even under the revised rules, a court may grant summary judgment only in those cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Boyer v. Walker,* 714 A.2d 458, 459 (Pa. Super. 1998); *Cappelli v. York Operating Co. Inc.,* 711 A.2d 481, 483 (Pa. Super. 1998) (en banc).

### (B) *Legal Duty*

In order to state a cause of action in negligence, a plaintiff must demonstrate (1) a duty of care owed by the defendant, (2) a breach of that duty, (3) a causal connection between the defendant's conduct and the plaintiff's resulting injury, and (4) actual harm or damage suffered

by the plaintiff. *Martin v. Evans,* 551 Pa. 496, 502, 711 A.2d 458, 461 (1998); *Trischetta v. Walters,* no. 95-CV-3660, Nealon, J., at p. 12 (Lacka. Cty. September 25, 1998). A contract may create a duty which requires a party to the agreement to use due care in performing a contract for the benefit of the other party to the agreement, as well as for third parties who are strangers to the contract. See *e.g., Gilbert v. Korvette's Inc.,* 457 Pa. 602, 616-17, 327 A.2d 94, 102 (1974) (under an agreement with a building owner, an escalator company owed a duty of care to all persons using the escalator); *Heath v. Huth Engineers Inc.,* 279 Pa. Super. 90, 92, 420 A.2d 758, 759 (1980) (based upon its contract with a sewer authority to supervise and inspect work and to assist in safeguarding the authority against potential hazards, an engineering company owed a duty to a contractor's employee who was killed as result of the collapse of a trench). The duty does not arise directly from the contract itself, but, rather, is imposed by law as a result of the nature of the undertaking in the contract. *Cantwell v. Allegheny County,* 506 Pa. 35, 40, 483 A.2d 1350, 1353 (1984); *Hawthorne v. Dravo Corp., Keystone Division,* 313 Pa. Super. 436, 442, 460 A.2d 266, 269 (1983). If a duty to third persons arises from a contract, the defendant is not relieved of liability to those third parties merely because the defendant has satisfied its obligation to the original party with whom it had contracted, nor is the defendant exculpated by the fact that the other contracting party was also negligent toward the third person. *St. Clair v. B & L Paving Co.,* 270 Pa. Super. 277, 280, 411 A.2d 525, 527 (1979).

Moreover, irrespective of the presence or absence of a contractual duty, a defendant may assume a duty by a course of conduct. For example, Pennsylvania has

adopted the Restatement (Second) of Torts §323 which provides that "[o]ne who undertakes, . . . for consideration, to render services to another which he . . . recognize[s] as necessary for the protection of the other's persons or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." *Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 576-77, 475 A.2d 1314, 1316 (1984); *Glick v. Martin and Mohler Inc.,* 369 Pa. Super. 428, 433-34, 535 A.2d 626, 628 (1987). Several Pennsylvania courts have construed section 323 as creating a legal duty where none would otherwise exist. See *Henry v. First Federal Savings & Loan Association,* 313 Pa. Super. 128, 134 n.3, 459 A.2d 772, 775 n.3 (1983). Pennsylvania has likewise adopted section 324A of the Restatement (Second) of Torts, see *Cantwell v. Allegheny County,* 506 Pa. 35, 483 A.2d 1350 (1984), which contains language identical to section 323 except that it extends the negligent actor's potential liability to third persons. See *Heath, supra* at 92, 420 A.2d at 759.

Under the express terms of the agreement that was drafted by it, Synergist assumed the duty to ensure "that the field team [was] trained in the site-specific health and safety procedures," "that [Gilarde was] properly trained and thoroughly versed in the SHERP," and "that [Gilarde was] properly trained in the use and selection of field monitoring and personal protective equipment." Synergist also agreed to "supervise health and safety performance of the staff," and, most importantly, to "correct work errors and conditions that may result in injury or exposure to hazardous substances."

In the case at bar, Boyanoski asserts that the decedent was never furnished with the required safety training, nor was he supplied with appropriate protective clothing while he was working with toxic soil and allegedly contracting myelodysplastic syndrome. Boyanoski further contends that the decedent was never provided with the requisite medical surveillance, and in that regard, the SHERP specifically imposed a duty upon Synergist to "review the health and safety training and medical monitoring records of subcontractor personnel," to "monitor records of worker exposure to toxics" and to "arrange medical attention in the event of an accident." Consequently, the duties that Synergist distinctly assumed under the SHERP correlate directly to the allegations of liability in this matter.

Synergist contends that it played a quiescent role in the Marjol project and that it did not owe a duty to the decedent as matter of law. According to Synergist, it merely assumed the responsibility to review and audit records and was not obligated to take any affirmative action to protect workers at the Marjol site. See *e.g., Frampton v. Dauphin Distribution Services Co.,* 436 Pa. Super. 486, 487, 648 A.2d 326, 327 (1994) (architect had no duty to warn construction workers of the existence of a visible overhead power line since "[a]ccording to the express terms of the agreement, the architect was not to be responsible for and was not to have control over construction activities or safety measures."); *Young v. Eastern Engineering and Elevator Co. Inc.,* 381 Pa. Super. 428, 437, 554 A.2d 77, 81 (1989) ("[w]e therefore hold that absent an undertaking by an architect, by contract or conduct, of the responsibilities of the supervision of construction and the maintenance of safe conditions on a construction project, an architect is not un-

der a duty to notify workers or employees of the contractor or subcontractors of hazardous conditions on the construction site.").

In support of its argument, Synergist relies heavily upon the ruling of the Supreme Court of Pennsylvania in *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990). In that case, the contract at issue initially required the engineer to review the "contractors' practices and procedures to minimize hazards associated with construction operations." *Id.* at 9, 568 A.2d at 935. However, that obligation was later "expressly eliminated in a subsequently entered agreement," *id.*, which merely required the engineer *"to assure delivery of the specified systems and facilities in accordance with contract drawings and specifications." Id.* at 9, 568 A.2d at 936. (emphasis in original) Pursuant to the contract specifications agreed to by the municipal authority and the general contractor, the engineer was permitted, but not required, to demand that remedial measures be effectuated in the event that the engineer discovered a work site safety hazard. *Id.* at 10, 568 A.2d at 936. Based upon the forgoing contractual language, the *Marshall* court concluded that the engineer's "duties pertaining to jobsite safety were to be passive in nature, not involving a duty to continually oversee the jobsite and seek out safety hazards" since the engineer's contractual obligations contemplated that its "involvement with safety concerns would be of an indirect sort, requiring contractors to furnish certain paperwork and forwarding that paperwork to [the municipal authority], rather than being an on-site inspector." *Id.* at 11-12, 568 A.2d at 936-37.

The engineer's duties in *Marshall* are anomalous to the obligations expressly assumed by Synergist in the SHERP. In contrast to the contract which required the *Marshall* engineer to simply monitor records, the SHERP imposed various obligations upon Synergist to "ensure" the provision of certain safety training and protective equipment and to "correct work errors and conditions" that could possibly result in hazardous exposure or injury. Unlike the detached involvement of the engineer in *Marshall,* Synergist personnel inspected the Marjol site operations on a weekly basis and would report any potential SHERP violations to the health and safety officer and the project engineer. Thus, both by contract and a course of conduct, Synergist assumed the duty to guarantee work site safety through appropriate training, equipment and corrective measures.

Synergist's duties in this case are more analogous to those present in *Heath, supra,* where a consulting engineer contractually agreed "to supervise the work, periodically inspect it, and assist in safeguarding the owner against defects and deficiencies on the part of the contractors." *Heath, supra* at 92, 420 A.2d at 759. In upholding a jury verdict rendered against the engineer, the Superior Court of Pennsylvania held that the engineer was property found liable under section 324A of the Restatement (Second) of Torts. *Id.* Based upon the reasoning in *Heath,* Synergist may likewise be held accountable in this case.

Accordingly, by virtue of the safety related duties assumed by Synergist in the SHERP that it prepared, the court cannot hold as a matter of law that Synergist owed no duty to the decedent in this litigation. Therefore,

Synergist's motion for summary judgment will be denied. An appropriate order follows.

## ORDER

And now, September 27, 1999, upon consideration of the motion for summary judgment of additional defendant, Synergist Inc., and based upon the reasoning set forth in foregoing memorandum, it is hereby ordered and decreed that the motion for summary judgment of additional defendant, Synergist Inc., is denied.