33 Mich. App. 395 (1971)
190 N.W.2d 373
ESTATE OF CLARK
SWARTHOUT
v.
BEARD
Docket No. 7887.
Michigan Court of Appeals.
Decided May 18, 1971.
*398 van Benschoten & van Benschoten, P.C., for plaintiff.
Wise, Early, Starbuck & Lennon (Carl H. Reynolds, of counsel), for defendant Lewis J. Sarvis.
Foster, Campbell, Lindemer & McGurrin (by John L. Collins), for defendant Beard's Welding & Erection Company.
Before: FITZGERALD, P.J., and HOLBROOK and BRONSON, JJ.
Leave to appeal granted, 387 Mich 770.
HOLBROOK, J.
Plaintiff's decedent, Leonard Clark, was killed on July 29, 1963, when the west wall of an excavation caved in on him. At the time, he was working in the excavation as an employee of Nordstrom-Myers, Inc., the general contractor, putting in footings for the library building at Alma College.
This is a wrongful death action naming Beard's Welding & Erection Company, the excavator, and *399 Lewis J. Sarvis, the architect, as original defendants. Nordstrom-Myers, Inc. was later added as a third-party defendant. All defendants were charged with negligence. The action against Nordstrom-Myers was dismissed without prejudice by the court on a theory of workmen's compensation immunity. After trial, the jury returned a verdict in the amount of $25,000 against Lewis J. Sarvis and found no cause of action as to Beard's Welding & Erection Company.
On appeal, defendant Sarvis contends that he owed no actionable duty to the plaintiff's decedent; loss of companionship and support for decedent's family are improper damage considerations; it was error to allow plaintiff to orally amend his pleadings and thereby change his theory of the case; his motion to dismiss should have been granted at the close of plaintiff's proofs; and the third-party complaint against Nordstrom-Myers, Inc., should not have been dismissed.
On cross-appeal, plaintiff contends that the court erred in refusing to instruct that conscious pain and suffering should be considered as an element of damages, and that plaintiff would be entitled to interest from the date of death to the date of the verdict.
The court denied Sarvis' motion for a directed verdict at the close of plaintiff's proofs. The general rule with respect to directed verdicts is that the proofs and reasonable inferences therefrom must be viewed in the light most favorable to plaintiff on review. Humenik v. Sternberg (1963), 371 Mich 667, 669; Holpainen v. American Motors Corporation (1970), 25 Mich App 124; Cusumano v. The Stroh Brewery Company (1970), 26 Mich App 549.
*400 Nordstrom-Myers, Inc., as general contractor, was required by contract to take all the necessary safeguards for the protection of workmen and the public.
Sarvis, as architect, was contractually bound to be the owner's representative, to inspect with authority to stop the work, and to use his powers under the building contract to enforce faithful performance.
Defendant Sarvis takes the position that its contract with the owner did not obligate it to insure, inspect, or supervise the project for the safety of workmen on the project, or to supervise and oversee the general day-to-day work of contractors and subcontractors, and that the general contractor was solely responsible for the safety of workmen.
A favorable-to-plaintiff view of the evidence indicates that defendant Sarvis is not a complete "outsider" to the general building contract. Trial testimony clearly establishes that 20% of the architect's fee was specifically allocated for the supervision of the project.
Defendant Sarvis' project architect in charge admitted that the architect had authority as Alma College's representative to stop the job. It could be stopped, he said, if the architect felt it was necessary to stop the work for the purpose of enforcing any of the provisions of the contract between the owner and the general contractor. He also admitted that to maintain the excavation in a safe condition was one of the provisions of the construction contract to be enforced by the architect. The architect had the right to stop the job if he deemed it necessary to enforce safety requirements.
The project engineer, Joseph Sugar, testified that at least six days before the cave-in, he personally showed architect employee Clement, that the west *401 wall of the excavation was neither shored nor sloped and was cracking because of wet clay. Mr. Clement agreed that the condition was dangerous and would have it corrected. Mr. Sugar also testified that the architect and only the architect had authority to shut down the job to correct the condition.
"An architect may be held liable for negligence in failing to exercise the ordinary skill of his profession, which results in the erection of an unsafe structure whereby anyone lawfully on the premises is injured. An architect's liability for negligence resulting in personal injury or death may be based upon his supervisory activities or upon defects in the plans. * * * The modern view is that privity of contract is not a prerequisite to liability. As in other negligence cases, however, there can be no recovery against the architect unless it can be established that his negligence was the proximate cause of the personal injury or wrongful death sued for." (Emphasis supplied.) 5 Am Jur 2d, Architects, § 25, pp 688, 689.
The responsibility of an architect may be similar to that of a lawyer or a physician: the law requires the exercise of ordinary skill and care common to the profession. Chapel v. Clark (1898), 117 Mich 638; Bayne v. Everham (1917), 197 Mich 181; Ambassador Baptist Church v. Seabreeze Heating and Cooling Co. (1970), 28 Mich App 424.
It is the contention of the defendant that even though Sarvis may have had notice of a hazardous condition in the excavation, he had no duty to take official action to warn workmen or to shut down the job.
The trial judge answered this argument in his opinion denying the motion for a new trial as follows:
*402 "While it is true that the general contractor had the contractual duty to take necessary precautions for the safety of employees, it is likewise true that defendant Sarvis had the authority to enforce the proper execution of the contract, and it would appear to the court that this would include the general contractor's obligation to provide for the safety of employees.
"The court is not persuaded by the argument that defendant Sarvis owed no duty of care to plaintiff's decedent. It is not necessary that there be a contractual relationship before a duty of care arises. It would appear to the court that plaintiff's decedent was within the zone of risk created by defendant Sarvis' failure to act; Elbert v. City of Saginaw (1961), 363 Mich 463, 479."
We agree with the determination made by the trial court. Plaintiff's decedent was, as an employee, lawfully on the premises and privity of contract under these circumstances is not a prerequisite to liability. 38 Am Jur, Negligence, § 14, p 656. The defendant was paid a fee to supervise the general construction. The dangerous condition of the west wall was brought to the attention of the architect, and he had authority to stop the work and make the necessary correction. He had knowledge that employees were working in the area of the wall and were in the zone of peril; injury could be foreseeable. Elbert v. City of Saginaw, supra; May v. Goulding (1961), 365 Mich 143, 153.
The question is whether defendant Sarvis used the reasonable care which would be exercised by a person of ordinary prudence under all the circumstances, in view of the probable danger of injury. There was evidence from which the jury could find that defendant Sarvis had actual knowledge of the dangerous condition of the wall and that he had *403 sufficient time and authority to effect a correction of the condition. The jury could conclude that failure to act constituted actionable negligence and was a proximate cause of the resulting death.
The evidence from both expert and lay witnesses is sufficient to establish a prima facie case of negligence. The issues of due care, duty, and breach are factually doubtful and all reasonable men would not probably agree.
"Since it is impossible to prescribe definite rules in advance for every combination of circumstances which may arise, the details of the standard must be filled in in each particular case. The question then is what the reasonable man would have done under the circumstances. Under our system of procedure, this question is to be determined in all doubtful cases by the jury, because the public insists that its conduct be judged in part by the man in the street rather than by lawyers, and the jury serves as a shock-absorber to cushion the impact of the law." Prosser on Torts (3d ed), Negligence: Proof, p 208.
The trial court did not err in denying Sarvis' motion for a directed verdict at the close of plaintiff's proofs. There is sufficient evidence from which a jury could reasonably infer that defendant Sarvis did not meet the prudent man test required by the specific factual circumstances of this case as revealed by the testimony of the witnesses and the other evidence.
On appeal, defendant alleges that the factors considered by the jury in awarding the plaintiff a $25,000 judgment are inconsistent with the principles set forth in Breckon v. Franklin Fuel Company (1970), 383 Mich 251.
In the instant case the court gave the jury the following instruction:
*404 "As damages plaintiff claims that the Clark Estate, on behalf of the children of the decedent, should be fairly compensated for the loss to Mr. Clark's children of his society, companionship and guidance. It is the further claim of plaintiff that on behalf of Dora Clark, the mother, the plaintiff is entitled to compensation for the loss of the society and companionship of her son, plus damages for any loss of services and support to Mrs. Clark, as shown by the evidence in the case.

* * *
"You may consider and award money damages as part of this pecuniary loss if you find there has been any loss of companionship or services or guidance to any of the children of said deceased * * *." (Emphasis supplied.)
In the case of Haupt v. Yale Rubber Co. (1970), 29 Mich App 225, 228, it is stated:
"The Breckon decision clearly holds that, aside from the statutorily provided recovery for conscious pain and suffering, if any, as well as damages for reasonable medical, hospital, funeral, and burial expenses for which the estate is liable, recovery under the wrongful death act is limited to damages for `pecuniary injury' or `pecuniary loss'. Under the Breckon decision, pecuniary loss does not include loss of companionship nor can damages be awarded on the basis of the grief endured by the surviving dependents."
In Benson v. Watson (1970), 26 Mich App 142, this Court stated on pp 146, 147:
"Since the trial in the present case the Supreme Court released Breckon v. Franklin Fuel Company (1970), 383 Mich 251, decided March 12, 1970, and released in the advance sheets April 16, 1970, in which the Court said loud and clear that loss of *405 companionship is not an element of damages under the death act. On p 275 the Court stated:
"`We hold that Wycko [Wycko v. Gnodtke (1960), 361 Mich 331] never did authorize recovery of death act damages over and above compensation for "pecuniary injury" or "pecuniary loss", aside of course from the statutorily provided recovery for conscious pain and suffering, if any, and "damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable."' And, on p 278:
"`Having ruled that Wycko made no precedent for recovery and distribution  under the acts of 1939  of damages for loss of companionship * * *.'
"Although the Supreme Court said Wycko never authorized damages for loss of companionship, the profession and the trial courts have interpreted the case as authorizing such damages. Neither plaintiff's counsel nor defendants' counsel can be faulted for not raising the issue in the trial court. Therefore, the case is remanded to the trial court for a new trial limited to the question of damages only. Costs to abide final results."
The trial judge, in giving his instructions, relied on Westfall v. Venton (1965), 1 Mich App 612, 618, 619, leave to appeal denied by the Supreme Court. See 377 Mich 700.
The trial court's instructions permitted recovery for loss of "companionship" and it is probable that a portion of the $25,000 verdict was awarded for reasons other than pecuniary loss, as defined in Breckon. This cause must be remanded for the purpose of determining pecuniary loss incurred under the rules set down in Breckon.
The case of Benson v. Watson, supra, was appealed to the Michigan Supreme Court on leave granted. The Supreme Court on February 9, 1971, *406 reversed the decision of the Court of Appeals and remanded the cause to the trial court for entry of judgment for the reason that defendant failed to raise the issue in the trial court or save the question for appeal. (384 Mich 804.) In reviewing the record we find that the testimony concerning loss of companionship was objected to by the defendants in the trial court and admitted over the objection, and that requested instruction number nine of defendant Beard, which was also requested by defendant Sarvis, was refused by the trial court. That proposed instruction, in part, reads as follows:
"In this case, I instruct you may not award any damages for conscious pain and suffering because there is no testimony Leonard Clark suffered any.
"Now, the act speaks in terms of an award for damages for pecuniary injury. Now, pecuniary injury has a settled meaning in our law and is limited to those damages which can be determined by recognized standards determining money loss; pecuniary injury does not include compensation for grief, loss of companionship, or mental sufferings."
It is further asserted in the defendant's brief on appeal that a specific objection to the instruction of the trial court submitting loss of companionship as an element of damages was voiced after the instructions were given in accordance with the provisions of GCR 1963, 516.2. In checking the transcript we find after the objections to the charge by plaintiff's counsel the following pertinent information:
"(At this point your reporter has no further notes concerning any objections made by counsel in the court's chambers concerning the court's charge. Your reporter has made a diligent search for such notes, feeling they must have been merely misplaced, but has failed to come up with them.)".
*407 It would appear under the circumstances that it would be unfair to say that defendants did not preserve their right to appeal this issue.
During the trial, plaintiff orally stated that his only theory of liability against defendant Sarvis was that he had notice or should have had notice of a dangerous condition and that he failed to shut down the job. Claims of negligence based upon the plans and specifications were abandoned. No objection was raised and the court never ruled upon plaintiff's oral motion to amend.
The rule in Michigan when proof varies from pleading and when the opposite party fails to object is laid down in the case of Hallock v. Income Guaranty Co. (1935), 270 Mich 448, 454 where the Court held:
"Objection on account of variance between pleadings and proofs may not be raised for the first time on appeal."
A variance between declaration and proofs, not being brought to the notice of the trial court and being curable by amendment, will be regarded on appeal as cured by amendment. Scendar v. Winona Copper Co. (1912), 169 Mich 665; Judge v. Kilts (1970), 27 Mich App 502.
Until appeal, no surprise or prejudice was alleged by the defendant. No additional time was requested to prepare a defense. The record indicates that this theory was within the scope of plaintiff's pleadings and defendant Sarvis produced two expert witnesses to controvert the proofs.
Defendant Sarvis joined decedent's employer, Nordstrom-Myers, Inc., as a third-party defendant. Sarvis contends he should have been permitted to present proofs to the jury on the basis of the employer's active negligence. A third-party complaint *408 against an employer carrying workmen's compensation cannot contain an allegation of negligence. Precedent for this rule is established in Husted v. Consumers Power Company (1965), 376 Mich 41, where Consumers filed a third-party complaint against Husted's employer Hertel-Deyo charging negligence on the employer's part and demanding contribution; the Court held at p 56:
"Thus if Husted could not sue his employer (Hertel-Deyo), and we know he could not, Hertel-Deyo and Consumers cannot be joint tort-feasors by law. Consumers therefore cannot sue Hertel-Deyo for contribution should it be held to respond to plaintiffs in damages."
In Husted, Consumers' third-party complaints were dismissed. The above quotation was cited in Vannoy v. City of Warren (1965), 2 Mich App 78, 81, and the Court stated:
"Accordingly the trial judge here was correct in refusing to permit amendment of appellants' third-party complaint to include negligence."
It is obvious that the trial judge was aware of the following declaration made in the Husted case at p 57:
"Although we deem such a provision needless, Consumers may if desired have included in the order of dismissal a declaration of no prejudice to its original right, if any, to recover over against Hertel-Deyo should it be compelled to satisfy  in whole or in part  any judgment or judgments these plaintiffs may recover in the causes now at issue."
In the instant case, the trial court, sua sponte, supplied this protection:
"An order shall be entered dismissing the third party complaint without prejudice to any right the *409 defendant and third party plaintiff Sarvis might have to recover over against Nordstrom-Myers, Inc., should it be compelled to satisfy a judgment plaintiff might recover in this cause."
This order did not foreclose any right defendant Sarvis might have had to recover against the employer, Nordstrom-Myers, Inc.
Plaintiff's cross-appeal presents two questions: (1) Should the question of damages for conscious pain and suffering have been submitted to the jury as requested by plaintiff? (2) Should the question of interest on damages from the date of the death to the date of the verdict have been submitted to the jury as requested by plaintiff?
(1)
Orland Burns testified that when he observed a dangerous condition on the wall of the excavation, he yelled to the people below to get out and they all got out except one. From the time he yelled to the workmen to get out until the cave-in occurred, approximately a minute or a minute and a half elapsed.
Leland Beard testified that he saw decedent standing in the corner of the excavation, that he saw dirt hit the decedent right back of his knees, and that, about that time, the whole earth fell right over on top of him.
There was no testimony concerning whether the death was instantaneous, whether the decedent was rendered unconscious, suffocated, or what was the direct cause of death.
A decedent's personal representative may recover upon proper pleading and proof in an action under the wrongful death act, damages for the pain and suffering, undergone by the decedent while conscious. *410 Reasonable compensation for pain and suffering may be based upon the period of decedent's consciousness between the time he received the injuries and his death.
Hanna v. McClave (1935), 273 Mich 571, cited by plaintiff, is factually distinguishable because the victim lived nearly a day and a doctor who visited the patient stated the man suffered pain while conscious.
In the present case, the trial court held there was not sufficient evidence of conscious pain and suffering to allow the jury to consider this as a factor in assessing damages. The record supports this determination.
(2)
On July 12, 1966, the Legislature passed MCLA § 600.6013 (Stat Ann 1971 Cum Supp § 27A.6013), giving it immediate effect. The amended statute provides in pertinent part:
"Interest shall be allowed on any money judgment recovered in a civil action, such interest to be calculated from the date of filing the complaint at the rate of 5% per year * * *."
In the case of Ballog v. Knight Newspapers, Inc. (1969), 381 Mich 527, 541, 542, it is stated:
"We conclude the amendment related to remedies and modes of procedure and repeat what we said in Hansen-Snyder Co. v. General Motors Corp. [(1963), 371 Mich 480], that `in the absence of language clearly showing a contrary intention,' we hold the amendment `be held to operate retrospectively and apply to all actions accrued, pending, or future.'"
This language indicates that the statute governs the adding of interest and, as the trial court held, no instruction to the jury in this regard is required.
*411 We are constrained to rule, that under the authority of Breckon, the judgment is reversed and the cause remanded for the purpose of determining the pecuniary loss incurred.
In fairness to the learned trial judge, we point out that the trial of this cause was held in the Circuit Court during the period from September 11 to September 18, 1968, and the rule adopted in Breckon by our Supreme Court was decided March 12, 1970, and published April 16, 1970.
Reversed and remanded. No costs.
All concurred.