554 A.2d 77

**Charles YOUNG**

v.

**EASTERN ENGINEERING AND ELEVATOR COMPANY, INC., Appellant, H.H. Robertson Company, the Ballinger Company, the Williard Company, Turner Construction Company, City of Philadelphia Board of Trusts, and GEMH 2, Inc. and the City of Philadelphia.**

**Appeal of EASTERN ENGINEERING AND ELEVATOR COMPANY, INC.**

Superior Court of Pennsylvania.

Submitted Sept. 8, 1988.

Filed Feb. 8, 1989.

430

John J. O'Brien, III, Philadelphia, for appellant.

Robert A. Korn, Philadelphia, for Young, appellee.

Barbara A. Pennell, Philadelphia, for H.H. Robertson, appellee.

Joel D. Gusky, Philadelphia, for Ballinger, appellee.

Michael Saltzburg, Philadelphia, for Williard, appellee.

Charles E. McClafferty, Philadelphia, for Turner, appellee.

Thomas E. Byrne, III, Philadelphia, for Bd. of Trusts, appellee.

Patrick M. Shea, Philadelphia, for Gemh 2, appellee.

John B. Day, Deputy City Solicitor, Philadelphia, for Philadelphia, appellee.

Before WIEAND, McEWEN and MELINSON, JJ.

MELINSON, Judge:

Appellant, Eastern Engineering and Elevator Company, Inc. [hereinafter "Eastern"], appeals from two Orders of the Court of Common Pleas issued by the Honorable Curtis C. Carson on June 16, and July 21, 1987, granting motions for summary judgment filed on behalf of Appellees, H.H.

Robertson Company [hereinafter "Robertson"] and The Ballinger Company [hereinafter "Ballinger"].

On October 10, 1979, Plaintiff, Charles Young [hereinafter "Young"], fell into an open elevator shaft while working on the construction of Wills Eye Hospital in Philadelphia. As a result of his fall, Young sustained serious bodily injury. The opening through which he fell was a twenty-inch wide gap in the drywall enclosure surrounding the elevator shaft. Young filed suit against the various parties responsible for the hospital's construction. Those parties and their respective roles are as follows:

(1) The City of Philadelphia, Trustee under the will of James Wills, Deceased—owner of the land;

(2) The Ballinger Company—architect;

(3) Turner Construction Company—general contractor/construction manager;

(4) Eastern Engineering & Elevator Co., Inc.—elevator subcontractor;

(5) GEMH 2, Inc.—drywall subcontractor;

(6) H.H. Robertson—Structural subcontractor; and

(7) The Williard Company—electrical subcontractor.

After several years of discovery, Appellees, H.H. Robertson [hereinafter "Robertson"] and The Ballinger Company [hereinafter "Ballinger"], filed motions for summary judgment. The trial court granted Robertson's motion on June 16, 1987, and Ballinger's motion on July 21, 1987. Thereafter, Eastern filed this timely appeal from those two Orders.

On appeal, Eastern raises two issues stated in its brief as follows:

I. THE LOWER COURT ERRED IN RULING THAT THE RECORD PRESENTS NO EVIDENCE UPON WHICH A NOTIFICATION DUTY, RELATIVE TO SAFETY VIOLATIONS[,] CAN BE PREMISED WITH RESPECT TO ARCHITECT[,] THE BALLINGER COMPANY.

II. THE LOWER COURT ERRED IN RULING THAT THE RECORD PRESENTS NO EVIDENCE UPON WHICH A NOTIFICATION DUTY, RELATIVE TO SAFETY VIOLATIONS, CAN BE PREMISED WITH RESPECT TO STRUCTURAL SUBCONTRACTOR, H.H. ROBERTSON COMPANY.

In determining whether the trial court erred in granting or denying a motion for summary judgment, this court must determine whether the "pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. Rule 1035(b); *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 174–75, 507 A.2d 323, 331 (1986); *Langan v. Harleysville Ins. Co.*, 376 Pa.Super. 372, 374, 546 A.2d 75, 76 (1988); *Helinek v. Helinek*, 337 Pa.Super. 497, 487 A.2d 369 (1985); *Loyal Christian Benefit Association v. Bender*, 342 Pa.Super. 614, 493 A.2d 760 (1985). "However, summary judgment may only be entered in those cases which are clear and free from doubt." *Consumer Party of Pennsylvania*, 510 Pa. 158, 174–75, 507 A.2d 323, 331; *Langan*, 546 A.2d at 76; *Weiss v. Keystone Mack Sales*, 310 Pa.Super 425, 456 A.2d 1009 (1983); *Rossi v. Pennsylvania State University*, 340 Pa.Super. 39, 489 A.2d 828 (1985). The moving party has the burden of proving that no genuine issue exists as to the material facts, and the record must be examined in the light most favorable to the non-moving party. *Thompson v. Nason Hospital*, 370 Pa.Super. 115, 535 A.2d 1177 (1988); *Knecht v. Citizens and Northern Bank*, 364 Pa.Super. 370, 528 A.2d 203 (1987). In making its determination, we must accept as true all properly pleaded facts, as well as all reasonable inferences which might be drawn therefrom. *Thompson*, 370 Pa.Super. 115, 535 A.2d 1177; *Knecht*, 364 Pa.Super. 370, 528 A.2d 203. We shall not disturb the trial court's decision granting summary judgment unless there has been an error of law, or a manifest abuse of discretion. *Dume v. Elkcom Co., Inc.*, 368 Pa.Super. 280, 533 A.2d 1063 (1987).

Eastern claims that the trial court erred in concluding that Ballinger did not have a duty to protect the workers from hazards on the Wills Eye Hospital construction site.

The Ballinger Company and the City of Philadelphia entered into a contract by which Ballinger would serve as general design architect for the Wills Eye Hospital project. Under the contract, Ballinger's only inspection responsibility was to make periodic visits to the hospital site to determine whether the work was proceeding in accordance with the contract documents and to familiarize itself with the progress and quality of the work. The contract had no provisions requiring Ballinger to supervise or control job safety or to implement safety precautions for the employees of the subcontractor or general contractor, or to halt construction if a defect was found in a contractor's work. Ballinger was not required to make exhaustive or continuous on-site inspections of the quality or quantity of the work. The contract contained no undertaking by Ballinger to assume any duty of supervision and control with regard to the actual construction of the building outside of periodic inspections to insure the quality of construction. The contract did not impose on Ballinger the responsibility for safety on the construction site. On the other hand, the general contractor and the subcontractors had the duty to protect the workers from the hazards on the construction site. Eastern has failed to set forth any articulable factual basis upon which Ballinger, as the overall design architect, was to provide temporary lighting and/or temporary barricades surrounding the service elevators during construction. It further appears that there was no contractual undertaking of that duty by Ballinger.

Our examination now turns toward the existence of a legal duty of Ballinger toward Young. Our review of the case law of the appellate courts of this Commonwealth fails to disclose any duty upon an architect to protect workers from hazards on the construction site absent an undertaking by the architect, by contract or conduct, of the responsibilities of the supervision and control of construction and

the maintenance of safe conditions on the construction project. *See Marshall v. Port Authority of Allegheny County*, 106 Pa.Cmwlth. 131, 525 A.2d 857 (1987) (Engineer had no duty to worker injured during bridge demolition upon which finding of negligence could be based absent evidence engineer was responsible for assuring safe work conditions); *Heath v. Huth Engineers, Inc.*, 279 Pa.Super. 90, 420 A.2d 758 (1980) (Engineer liable for negligence where contract between engineer and sewer authority provided that engineer supervise work, periodically inspect it, and assist in safeguarding owner against defects by contractor).

■ Generally, an architect may be held liable for negligence in failing to exercise the ordinary skill of his profession, which results in the erection of an unsafe structure whereby anyone lawfully on the premises is injured. 97 A.L.R.3d § 2(a) (1980); 5 Am.Jur.2d, Architects § 25.

There is a split of authority as to whether an architect is liable to workers for injuries or death resulting from hazardous working conditions on a construction site. Although there is no clear majority, it would appear that the weight of authority is on the side of non-liability. *Chesapeake and Potomac Telephone Company of Maryland v. Chesapeake Utilities Corporation*, Del. 436 A.2d 314 (1981); *Coffey v. Derby Steel Company, Inc.*, 291 Md. 241, 434 A.2d 564 (1981); *Krieger v. J.E. Greiner Company*, 282 Md. 50, 382 A.2d 1069 (1978). It would appear that an architect who, acting as an independent contractor, plans and supervises construction work is under a duty to exercise ordinary care in doing so in order to protect any person who foreseeably and with reasonable certainty may be injured by his failure to do so.

There are generally two types of cases in which liability is imposed: (1) cases in which there are contractual provisions which impose such liability upon the architect, and (2) in the words of the Arizona Appeals Court,

"these cases have disregarded fundamental contractual principles in attempting to parlay general ... supervision

clauses which give the ... architect a right to stop observed unsafe construction processes into a duty which is neither consistent with generally accepted usage nor contemplated by the contract or the parties."

*Reber v. Chandler High School District # 202,* 13 Ariz. App. 133, 135–36, 474 P.2d 852, 854–55 (1970) (emphasis in original).

The leading case which imposed liability on an architect is *Miller v. DeWitt,* 37 Ill.2d 273, 226 N.E.2d 630 (1967). In holding the architect liable to the worker, the court stated that while there was no duty to specify what methods the contractor should use in building the structure, the terms of the contract between the owner and the general contractor gave the architect the right to insist upon a safe and adequate use of that method. *Id.,* 37 Ill.2d at 285, 226 N.E.2d at 638. Other cases include *Erhart v. Hummonds,* 232 Ark. 133, 334 S.W.2d 869 (1960) (Court held it was a jury question as to whether the architect was negligent in failing to stop construction because of poor shoring where the contractor was required or directed by the architect to do so, and the architect was authorized to stop the work.); *Geer v. Bennett,* Fla.App. 237 So.2d 311 (1970) (The court stated, in *dicta,* when architects do undertake supervision of construction in addition to the preparation of plans, and when they perform their supervisory duties in a negligent fashion their liability is separate and distinct from the liability of the party who negligently performs the actual building process.); *Swarthout v. Beard,* 33 Mich.App. 395, 190 N.W.2d 373 (1971), *rev'd on other grounds,* 388 Mich. 637, 202 N.W.2d 300 (1972) (Architect was liable for death resulting from cave-in where he admitted that one of the provisions of the contract was that an excavation was to be maintained in a safe condition and that he had the right to stop the job if he thought it necessary for enforcement of safety requirements.)

With respect to cases denying liability, the leading case is probably that of *Day v. National U.S. Radiator Corporation,* 241 La. 288, 128 So.2d 660 (1961) where the widow of

the deceased employee of a subcontractor obtained a judgment against the architects; however, the Louisiana Supreme Court reversed, stating that the architects were under no duty to supervise the contractor's method of performing his contract, unless such power was provided for in the specifications.

"Their duty to the owner was to see that before final acceptance of the work the plans and specifications had been complied with, that proper materials had been used, and generally that the owner secured the building it had contracted for."

*Id.,* at 304–05, 128 So.2d at 666.

Other cases among those which held that architects are not liable include: *Baker v. Pidgeon Thomas Company,* 422 F.2d 744 (6th Cir.1970) (No liability because there was nothing in the [architect's] contract with the owner that imposed a duty to ascertain whether all the subcontractors were conforming to their contracts with the owner, except to the extent those contracts required conformity with design specifications. The architect had no authority to stop work for safety reasons as they could when they detected deviations from specifications."); *Nauman v. Harold K. Beecher and Associates,* 24 Utah 2d 172, 467 P.2d 610 (1970) (insufficient evidence to render an architect liable). In *Nauman,* the court observed:

"It would be outside the bounds of reasonable care to require the architect to scrutinize each act done by the foreman and fifty-eight other workmen over an eleven acre construction site to make certain that none of them did a potentially dangerous act." *Id.,* at 178–79, 467 P.2d at 614–15.

*Krieger,* 382 A.2d at 1077. *See also Peterson v. Fowler,* 27 Utah 2d 159, 493 P.2d 997 (1972). *Vonasek v. Hirsch and Stevens, Inc.,* 65 Wis.2d 1, 221 N.W.2d 815 (1974); *Ramos v. Shumavon,* 247 N.Y.S.2d 699, 21 A.D.2d 4, *aff'd without opinion,* 15 N.Y.2d 610, 255 N.Y.S.2d 658, 203 N.E.2d 912 (1964).

We therefore hold that absent an undertaking by an architect, by contract or conduct, of the responsibilities of the supervision of construction and the maintenance of safe conditions on a construction project, an architect is not under a duty to notify workers or employees of the contractor or subcontractors of hazardous conditions on the construction site.

After a careful review of the facts in the case *sub judice*, it is clear that the architect, Ballinger, did not undertake any responsibilities, by conduct or contract, for the supervision and control of the actual construction of the building with the exception of its duty to make periodic inspections to insure the quality of construction. Rather, Ballinger was to make periodic visits to the site to familiarize itself generally with the progress and quality of the work and determine, in general, if the work was proceeding in accordance with the contract. Furthermore, the contract explicitly stated that Ballinger was not required to make "exhaustive or continuous on-site inspections." Thus, Ballinger was under no duty to notify the worker, Young, of the hazardous condition which existed; i.e. the twenty-inch wide gap in the drywall enclosure around the elevator shaft. For this reason, Eastern's first claim fails.

Appellant has raised for the first time on appeal that it is a third-party beneficiary to the contract between Ballinger and the owner. It is a well established tenet of appellate jurisprudence that a party may not ordinarily raise a claim for the first time at the appellate level. *See* Pa.R.A.P. Rule 302(a); *see also Kimmel v. Somerset County Commissioners,* 460 Pa. 381, 333 A.2d 777 (1975); *Marzullo v. Stop–N–Go Food Stores,* 364 Pa.Super. 106, 527 A.2d 550 (1987). Since Eastern has failed to raise in the court below its third-party beneficiary argument challenging the grant of summary judgment in favor of Ballinger, this issue is waived. We note, however, that had this issue been raised at the trial court level, it would have been found meritless as the elements required for one to be a third-party beneficiary are absent. The contract between Ballinger

and the owner contains no statement that there is any intention that appellant benefit in any way from the contract. *See Spires v. Hanover Insurance Company*, 364 Pa. 52, 70 A.2d 828 (1950); *Manor Junior College v. Kaller's Inc.*, 352 Pa.Super. 310, 507 A.2d 1245 (1986) (to be a third-party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the third party that the latter should be a beneficiary, but *both parties to the contract* must so intend, and they must indicate that intention in the contract). Thus, Eastern's claim is without merit.

■ In its second contention of error, Eastern claims that the trial court erred in ruling that the record presents no evidence upon which a notification duty, relating to safety violations, can be premised with respect to Robertson. We disagree.

H.H. Robertson Company had the contract to place large gray metal panels on the exterior of the building and around several columns on the interior of the building. With the exception of the interior columns, all of Robertson's work was completely exterior in nature. Additionally, all the work performed by Robertson was completed some time before the accident occurred.

Eastern contends that the Restatement (Second) of Torts §§ 384 [1] and 343 [2] create a duty of care on the part of

1. Restatement (Second) of Torts § 384 provides:
   **§ 384. Liability of Persons Creating Artificial Conditions on Land on Behalf of Possessor for Physical Harm Caused While Work Remains in Their Charge.**
   One who on Behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.

2. Restatement (Second) of Torts provides:
   **§ 343. Dangerous Conditions Known to or Discoverable by Possessor.**
   A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

Robertson as a subcontractor to employees of other subcontractors at the construction site. A thorough reading of § 384 reveals that the duties of a subcontractor are limited when a general contractor is involved in the construction project. Comment (d) of § 384 Restatement (Second) of Torts states:

"... Again a general contractor employed to do the whole of the work may, by the authority of his employer, sublet particular parts of the work to subcontractors. In such a case, the rule stated in this section applies to subject the particular contractor or subcontractor to liability for only such harm as is done by the particular work entrusted to him ..."

Applying § 384 to the case at bar, it appears that Robertson had the duty to exercise reasonable care to protect Young from injuries he may receive as a result of dangerous conditions with regard to the work Robertson had subcontracted to perform if Young was not likely to discover or protect himself against those conditions. Thus, we must inquire whether Robertson created the dangerous condition in the performance of its contractual duties.

Robertson's duties included installing the exterior wall panels of the hospital and did not involve any work on the inside of the hospital except for column enclosure at the first floor main entrance. Robertson gave deposition testimony that it had no involvement in the elevator construction and that no employees of Robertson did any work in the immediate area of Young's accident. The trial court, in reviewing the extensive discovery materials, found "there has not been a scintilla of evidence pointing to liability on the part of [Robertson]." Eastern relies on the bald assertion that all subcontractors were advised to look for and report any hazardous conditions on the worksite. Construc-

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and,

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

tion of the elevators or the drywall on the exterior of the elevator shafts was not part of the Robertson's contract. The hazard which is alleged to have caused Young's injuries was inside the building; however, with the exception of the column enclosures on the first floor, Robertson's work was exclusively on the exterior of the building.

We also note that Eastern is the only party in this case that opposes Robertson's motion for summary judgment. It was apparently clear to the other parties, including Young, that once discovery had been completed, there was no genuine issue as to the liability of Robertson. Upon independent review of the record, we find, as did the trial court, that Eastern has not presented any evidence which points to the existence of any genuine issue of material fact. Absent testimony of record that Robertson was involved in work on, or had control over the elevator shaft where Young fell, Robertson was not under a duty to notify Young of the hazardous conditions, and thus, cannot be liable for Young's injuries.

The Orders of the trial court are affirmed.