# Oxford Presbyterian Church v. Hindman Plumbing, Heating & Air Conditioning

*Richard W. Yost*, for plaintiff.
*C. Richard Morton*, for defendants.

WOOD, *J.*, February 16, 1998—Plaintiff Oxford Presbyterian Church and defendant Thomas W. Hindman have both moved me to enter summary judgment in their behalf. For the reasons which follow, I will enter summary judgment in favor of defendant Hindman.

This action arises out of a fire that occurred at the Oxford Presbyterian Church on May 28, 1989. Following the fire, various reports were filed concerning its origin and causes, including reports prepared by experts retained by plaintiff. To summarize these reports, I will quote from plaintiff's brief in answer to defendant Hindman's motion for summary judgment: "[the various experts] confirm that the fire was caused by the ignition of wood joists surrounding the ventilation of the east boiler. The wood became extremely combustible because of a condition known as 'pyrolysis'[,] which is a chemical change due to continued exposure to heat. The pyrolysis was caused by the inadequate ventilation in the church's heat exchange system."

Defendant Hindman ran a plumbing, heating and air conditioning company, and was called on from time to time to "troubleshoot" plaintiff's heating system when it would break down or cease to function properly. According to an affidavit filed by the church sexton, Hindman would be advised of the problem and requested to repair or correct it. Plaintiff avers in its memorandum that "[t]he church relied on the expertise of Hindman and his employees to competently determine the cause of the heating problem and correct it in accordance with the customs and standards of the industry."

Hindman himself gave a lengthy deposition, detailing the things he would do when he received the service call. Most of these things were in fact "troubleshooting," that is, measures designed to fix the immediate problem

and to make the furnace function again. Hindman never undertook to examine the design and functioning of the entire system, or to recommend or to undertake repairs which would address overall difficulties with the system.

There is virtually no dispute between the parties about the above facts. Plaintiff has submitted reports of various engineers which contend that it was Hindman's responsibility, when called to service the heating system, to make an examination of the system as a whole, to apply certain readily available tests, and (at the very least) to recommend remedial measures which would have prevented the pyrolysis problem. However, I consider it my responsibility, and not that of the expert engineers, to formulate the duty owed by Hindman in the context of this litigation. See *Howell v. Clyde*, 533 Pa. 151, 154 n.1, 620 A.2d 1107, 1108 n.1 (1993). The issue separating the parties, therefore, is not one of fact so much as it is one of law: what was Hindman's responsibility in the context of this case.[1]

Section 323 of the Restatement (Second) of Torts provides as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

---

1. There was also a small flap during oral argument over whether Hindman was properly sued as an individual or a corporation. In view of my disposition, that question is of no importance.

"(b) the harm is suffered because of the other's reliance upon the undertaking."

Simply stated, the Restatement and Pennsylvania law require that if a person agrees to perform a service for another, and during the course of performance of that service becomes aware or should become aware that there are steps which need to be taken for the protection of the property of that other person, the servicing party is obliged to take those steps, even though they may not be part of the original undertaking.

So stated, the issue is, in a sense, one of foreseeability. What does a person or entity calling in a repairman have a right to expect that person to do? What problems is the repairman obliged to foresee and guard against in the proper discharge of his responsibilities? Thus stated, the issue bears considerable resemblance to the issue that was posed for me in my prior opinion in *Stoltzfus Trailer Sales Inc. v. Allied Propane Company*, civil action 92-10971 (slip opinion dated August 7, 1996). In that case, I decided that it was too much to expect that a repair person coming into one part of a building to deal with one problem should extend his or its inquiry throughout the entire building, and check on the work done by others as well. In this case, although I think the question is perhaps a much closer one, my reaction and my answer are the same.

There is little guidance from the appellate authorities in this area. It might be helpful to say what this case is not about. It is not a case where A, in performance of a contractual duty to B, does something which injures C, or fails to do something so that injuries to C are the result. Thus, it is not *Glick v. Martin and Mohler Inc.*, 369 Pa. Super. 428, 535 A.2d 626 (1987), in which a construction company was sued by the victim of a rape because the construction company improperly per-

formed an agreement with the owner of the property to keep the property secure. Nor is it *Young v. Eastern Engineering and Elevator Co. Inc.*, 381 Pa. Super. 428, 554 A.2d 77 (1989), in which a worker fell through a hole in the drywall surrounding an elevator shaft and sued the architect on the job. However, it is noteworthy that both of those cases limit the contracting party to the responsibilities which it has undertaken in the contract, and do not find a general obligation to make premises safe such as would be imposed upon, for instance, the owner of premises.

Plaintiff has cited *St. Clair v. B & L Paving Company*, 270 Pa. Super. 277, 411 A.2d 525 (1979), which points out that "[t]hose who undertake an activity pursuant to a contract have both a self-imposed contractual duty and a 'social' duty imposed by the law to act without negligence." *Id.* at 279, 411 A.2d at 526. No argument there, but, for purposes of this case, that statement begs the question of what the social duty is. In *St. Clair*, the court goes on to note that where the contractor takes possession of land, its duty becomes analogous to that of a possessor of land, even after the contractor thereafter moves off the job. That is clearly not our situation here.

In the same vein, in *Hess v. Fuellgraf Electric Company*, 350 Pa. Super. 235, 504 A.2d 332 (1986), liability was imposed upon a contractor when a conveyer belt malfunctioned and caused injury to a worker. However, in both the *St. Clair* and *Hess* cases, it is noteworthy that the defendants did something which, for one reason or another, did not work properly, and arguably caused the plaintiff's injuries. In the case in front of me, the contention is not that the defendant did anything which caused this fire. Quite to the contrary. The contention

is that the defendant failed to take steps to *prevent* the pyrolysis from occurring.

Does this make a difference? Ever since the case of *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978), liability has been imposed upon medical care providers under section 323 of the Restatement (noted above) for failing to take steps which would have prevented injury, thus increasing the "risk" of harm. However, as best I can determine, this sort of analysis has been limited to cases involving medical care, and has not been imposed upon contractors and servicemen such as we have in this case. It seems fair to say that the "increased risk of harm" analysis is a means of reducing the burden of proof placed upon a plaintiff in medical cases, because of the difficulty of proving causation by traditional cause-and-effect means. See *e.g., Poleri v. Salkind*, 453 Pa. Super. 159, 169-70, 683 A.2d 649, 654 (1996).

These matters are fascinating, and no doubt could be analyzed in more depth than I have provided here. However, to make a long story short, it seems to me that the plaintiff's proposition is that a serviceman who comes to do repairs on a property owner's heating system is obliged not only to do the immediate repairs necessary to get the system functioning again, but is also obliged to examine the entire system, discover the root causes of the problems, and to take remedial action. This seems to me to be too large a burden to impose under the circumstances.

### ORDER

And now, February 16, 1998, based on the foregoing reasoning, I enter summary judgment in favor of Thomas W. Hindman Plumbing, Heating & Air Conditioning, and against Oxford Presbyterian Church.