# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-01807-SCT

*DAVID McKEAN, FRANCESCO MEDINA,*
*DONALD ARRINGTON AND WAYNE*
*ROBERTSON*

*v.*

*YATES ENGINEERING CORPORATION,*
*ANDERSON REGIONAL MEDICAL CENTER,*
*AND FOIL WYATT ARCHITECTS AND*
*PLANNERS, PLLC*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                 10/21/2013
TRIAL JUDGE:                      HON. LESTER F. WILLIAMSON, JR.
COURT FROM WHICH APPEALED:        LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:         KEN R. ADCOCK
                                  MARK D. MORRISON
                                  WILLIAM CHRISTOPHER IVISON
ATTORNEYS FOR APPELLEES:          THURMAN LAVELLE BOYKIN, III
                                  JAMES D. HOLLAND
                                  ROMNEY HASTINGS ENTREKIN
                                  PEELER GRAYSON LACEY, JR.
                                  SHIRLEY M. MOORE
                                  ROBERT B. IRELAND, III
                                  RICHARD O. BURSON
NATURE OF THE CASE:               CIVIL - PERSONAL INJURY
DISPOSITION:                      AFFIRMED IN PART AND VACATED IN
                                  PART - 09/15/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   **EN BANC.**

   **KING, JUSTICE, FOR THE COURT:**

¶1.    During the construction of Jeff Anderson Regional Medical Center's ("ARMC")

"Medical Towers III" expansion in Meridian, scaffolding built by W.G. Yates & Sons Construction Company ("Yates Construction") collapsed, injuring David McKean, Francesco Medina, Donald Arrington, and Wayne Robertson (collectively, the "plaintiffs"). The trial court granted summary judgment and dismissed the plaintiffs' claims against all defendants. The Court of Appeals affirmed the decisions of the trial court. Although we agree with the Court of Appeals' decision to affirm the trial court, we now grant certiorari to clarify two issues: (1) whether this Court has adopted the seven-factor test used in *Hanna v. Huer, Johns Neel, Rivers, & Webb*, 662 P.2d 243 (Kan. 1983) *superceded by statute*, *as recognized in Edwards v. Anderson Engineering, Inc.*, 166 P.3d 1047 (Kan. 2007), to determine whether an architect's supervisory powers go beyond the provisions of the contract; and (2) to clarify this Court's position on the effect of an "undocumented immigrant" status on recovery for workplace injuries.

### FACTS AND PROCEDURAL HISTORY

¶2.     ARMC planned the "Medical Towers III" expansion to be a multi-story building located in Meridian. ARMC hired Foil Wyatt Architects and Planners PLLC (Foil Wyatt) to design the expansion and hired Yates Construction to act as the general contractor for the project. Yates Construction then hired Spectrum II as the subcontractor for concrete services. The plaintiffs were employed by Spectrum II. Construction on the expansion began in 2008. In order to complete the second floor of the building, Yates Construction asked Yates Engineering Corporation ("YEC") to provide design drawings for a temporary scaffolding used to support the second floor concrete slab during construction.

2

¶3.    The Court of Appeals stated:

As of September 2008, the first-story reinforced concrete slab had been poured, and Yates Construction was preparing to pour the concrete walls and columns that would help support the elevated second-story reinforced concrete slab. Yates Engineering became involved in the construction project when Dan Perry, Yates Construction's general superintendent, asked engineer Ted Pope to prepare design drawings of the scaffolding and second-story formwork. During late September 2008, Pope visited the construction site and met with Mike Clark, a construction supervisor for Yates Construction. Pope noticed some formwork for the first-story concrete columns and walls, but he did not see any scaffolding for the second-story formwork.

During Pope's visit, he and Clark discussed some of the necessary features of the scaffolding, such as the need for wooden 4"x4" posts and stringers, and 2"x4" joists. Pope prepared his preliminary design drawings, and submitted them for comments to Yates Construction on October 3, 2008. Meanwhile, Yates Construction had begun building the scaffolding before receiving Pope's design drawings.

It is undisputed that Pope's plan was fundamentally flawed in one significant way-it contemplated using twenty-four-foot posts. However, wooden 4"x4" posts are not available in that length. Consequently, the posts would have to be "tiered" by stacking them end to end and "spliced" for stability. Despite the fact that Pope's plan was effectively impossible to follow, Yates Construction had no comments about Pope's design. Yates Construction asked Pope to send a final version of his design drawings. Pope complied on October 6, 20[08]. However, Yates Construction ignored essential features of Pope's scaffolding design.

*McKean v. Yates Engr. Corp.*, No. 2013-CA-01807-COA, 2015 WL 5118062, at *1 (Miss. Ct. App. Sept. 1, 2015), reh'g denied (Mar. 1, 2016). On November 17, 2008, the plaintiffs were attempting to pour an elevated concrete slab for the second floor. As the concrete was being poured, the wooden scaffolding collapsed and caused injury to the plaintiffs. It is undisputed that the scaffolding caused the collapse and not the formwork.

¶4.    The plaintiffs filed suit against Yates Construction on September 1, 2010, claiming

3

that Yates Construction negligently failed to construct the scaffolding and related structures in accordance with plans and specifications. In February 2011, the plaintiffs amended their complaint to add Yates Engineering and Foil Wyatt as defendants. The plaintiffs alleged that Yates Engineering and Foil Wyatt negligently failed to formulate plans and specifications for the scaffolding, negligently failed to inspect the scaffolding, and failed to correct known deficiencies in the scaffolding.

¶5.     American Resources Insurance Company Inc. filed a declaratory-judgment action in the United States District Court for the Southern District of Mississippi. In March 2012, the district court held that Yates Construction was Spectrum II's statutory employer. Because Yates Construction had secured workers' compensation insurance coverage for the plaintiffs, the circuit court dismissed the plaintiffs' suit against Yates Construction pursuant to the exclusive remedy provision of the Mississippi Workers' Compensation Act. In June 2012, the plaintiffs filed a second amended complaint, adding ARMC as a defendant and claiming that ARMC negligently failed to require a written contract with Yates Construction, negligently failed to supervise and inspect Yates Construction's work, and failed to maintain the premises in a reasonably safe condition and warn the plaintiffs of dangers.

¶6.     Yates Engineering, joined by ARMC, filed a motion for summary judgment against plaintiff Medina, claiming that because Medina allegedly was not an American citizen and was therefore not lawfully employed, his claims should be dismissed due to his activity at the time of the accident. On February 20, 2013, the trial court dismissed Francesco Medina's claims. The circuit court then granted summary judgment in favor of Foil Wyatt, finding that

4

Foil Wyatt had no duty to inspect the scaffolding. The Court of Appeals stated:

> In August 2013, the circuit court granted summary judgment in favor of Yates Engineering. The circuit court's decision was based on its conclusion that "[a]t no point in time did Yates Engineering assume the duty [to] inspect or supervise the construction and implementation of its design drawings either by contract or conduct." The circuit court later granted ARMC's motion for summary judgment. According to the circuit court, "no genuine issue of material fact remains with respect to Plaintiffs' claims against [ARMC], and therefore, [ARMC] is entitled to summary judgment on Plaintiffs' claims against it." The circuit court also entered a final judgment on that date.

*McKean*, No. 2013-CA-01807-COA, 2015 WL 5118062, at *3.

¶7. The plaintiffs appealed and argued that the trial court erred in granting summary judgment to Foil Wyatt, Yates Engineering, and ARMC. In its September 1, 2015, opinion, the Court of Appeals affirmed the trial court on all issues.

## DISCUSSION

### I. Supervisory Duty

¶8. It is undisputed in this case that defects in the scaffolding, not the formwork, caused the collapse that injured the plaintiffs and that part of the scaffolding had been buit by Yates Construction before Pope turned in his design drawings. The plaintiffs argued that a genuine issue of material fact existed as to whether Pope breached his duty to design a sufficient scaffolding system and as to whether Pope breached his duty to inspect the scaffolding that Yates Construction built. The plaintiffs also argued that Foil Wyatt had a  duty through contract and conduct to inspect the scaffolding before the concrete was poured. In its analysis to determine whether an engineer had a supervisory duty outside the provisions of the contract, the Court of Appeals quoted a seven-factor test used in *Hanna v. Huer, Johns*

5

*Neel, Rivers, & Webb*, 662 P.2d 243 (Kan. 1983):

> There are "seven factors to determine whether supervisory powers go beyond the provisions of [a] contract." *Hobson*, 878 So.2d at 72 (¶ 15) (citations omitted). Those factors are:(1) actual supervision and control of the work; (2) retention of the right to supervise and control; (3) constant participation in ongoing activities at the construction site; (4) supervision and coordination of subcontractors; (5) assumption of responsibilities for safety practices; (6) authority to issue change orders; and (7) the right to stop the work. Id.

*McKean*, No. 2013-CA-01807-COA, 2015 WL 5118062, at *5 (quoting *Hobson v. Waggoner Eng'g Inc.*, 878 So. 2d 68, 77 (Miss. Ct. App. 2003)).

¶9.    This Court first cited the seven-factor *Hanna* test in *Jones v. James Reeves Contractors, Inc.*, 701 So. 2d 774 (Miss. 1997). There, the Court was tasked with determining, *inter alia*, whether a project's architects had a duty to warn workers of dangerous soil conditions based upon their prior knowledge. *Id.* at 784. Because it was an issue of first impression, the Court looked to other jurisdictions for guidance and quoted in a string cite the *Hanna* factors. *Id.* at 784. The *Jones* Court later rejected the *Hanna* court's holding that an architect's contractual duty to maintain actual supervision over the details of the construction project did not entail the duty to supervise safety, and stated that "[i]t is the opinion of this Court that the holding of [*Young v. Eastern Engineering & Elevator Co., Inc.*, 554 A.2d 77 (1989)] provides the clearest pronouncement on the issue before the Court and makes the most common sense under the circumstances." The *Young* opinion stated:

> We therefore hold that absent an undertaking by an architect, by contract or conduct, of the responsibilities of the supervision of construction and the maintenance of safe conditions of a construction project, an architect is not under a duty to notify workers or employees of the contractor or subcontractors of hazardous conditions on the construction site.

***Jones***, 701 So. 2d at 785-86 (quoting ***Young***, 554 A.2d at 80).

¶10.    In a later case, ***Hobson v. Waggoner Engineering, Inc.***, 878 So. 2d 68 (Miss. Ct. App. 2003), the Court of Appeals cited ***Jones*** in its analysis of whether engineers or architects had a duty to protect construction workers from harm while on the job site, and stated:

> As in ***James Reeves Contractors, Inc.***, we review the seven factors in ***Hanna*** to determine whether the engineer's supervisory powers extended beyond the contract provisions. Based on the undisputed facts before the trial court, we agree with the trial court that Waggoner Engineering's duties and responsibilities did not.

***Hobson v. Waggoner Engr., Inc.***, 878 So. 2d 68, 76 (Miss. Ct. App. 2003).

¶11.    We now clarify our position on the supervisory duty of architects and adopt the seven-factor test used in ***Hanna***, to determine whether an architect's supervisory powers go beyond the specific provisions of the contract. These ***Hanna*** factors are to be used as guidance and are not exhaustive. We also reaffirm our previous holding that for an architect to have an affirmative duty to warn of dangerous conditions, the architect must "by contract or conduct" take on the responsibility to maintain the safety of the construction project. ***Jones v. James Reeves Contractors, Inc.***, 701 So. 2d 774, 785 (Miss. 1997). If the architect does take on a duty to supervise, "the supervision of safety is encompassed in the duty to supervise, and no separate agreement to supervise safety is necessary where the architect is supervising the details of every other aspect of the project." ***Id.***

¶12.    We affirm the holding of the circuit court and Court of Appeals that summary judgment in favor of Foil Wyatt was appropriate and that Pope had no duty based on contract

7

or conduct to inspect the scaffolding or warn of defects.

## II.       Undocumented Immigrant

¶13.    Before granting summary judgment to all defendants the trial court dismissed Francesco Medina's claims, holding that, based on this Court's decision in *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 484 (Miss. 2006), even if Yates Engineering and ARMC were found to have been negligent, Medina's alleged undocumented immigrant status barred him from recovery. The Court of Appeals affirmed the trial court's summary judgments in favor of Yates Engineering, Foil Wyatt, and ARMC and held that "[b]ecause these conclusions are dispositive, Medina's claim that the circuit court erred in dismissing his claim due to his immigration status is moot; this opinion should not be construed as implicit agreement with the circuit court's ruling in this regard." *McKean*, No. 2013-CA-01807-COA, 2015 WL 5118062, at *9.

¶14.    In *Price*, this Court held "[i]If a plaintiff cannot open his case without showing that he has broken the law, a court will not aid him." *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 484 (Miss. 2006). There, the plaintiff sued multiple defendants, claiming that he sustained injuries, including addiction, from ingesting OxyContin. *Id.* at 482. Because the plaintiff had been simultaneously seeing multiple doctors and using different pharmacies to acquire OxyContin, a controlled substance, this Court found that summary judgment was appropriate and held that "[h]is violation of the law is not merely a condition, but instead an integral and essential part of his case and the contributing cause of his alleged injury." *Id.* at 485.

¶15.	However, unlike in *Price*, Medina's conduct here was not *the* contributing cause of his alleged injury, nor would the same public policy be advanced here as in that case. The Mississippi Constitution states, "All court shall be open; and *every person* for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." Miss. Const. Art. 3, § 24 (emphasis added). Section 25 states, "*No person* shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both." Miss. Const. Art. 3, § 25 (emphasis added). Thus, the Mississippi Constitution does not limit access to our courts and leaves open for *every person* a remedy for injury done to his person.

¶16.	Other jurisdictions also have found that undocumented immigrants have a right of access to the court system. "[A] well established body of law holds that illegal aliens have rights of access to the courts and are eligible to sue therein to enforce contracts and redress civil wrongs such as negligently inflicted personal injuries." *Rosa v. Partners in Progress, Inc.*, 868 A.2d 994, 997 (N.H. 2005) (quoting *Mendoza v. Monmouth Recycling Corp.*, 672 A.2d 221, 225 (N.J. 1996); *see also Mendoza*, 672 A.2d at 224 ("Surely, the effect on the worker of his injury has nothing to do with his citizenship or immigration status. If his capacity to work has been diminished, that disability will continue whether his future employment is in this country or elsewhere."); *Arteaga v. Literski*, 265 N.W.2d 148, 150 (Wis. 1978) ("It cannot be seriously argued that people enter this country illegally so they can recover for an injury that will be inflicted upon them later."). In fact, if an undocumented

alien were prevented from bringing an action against his employer for negligence, it would even encourage employers to hire undocumented aliens. *See Montoya v. Gateway Ins. Co.*, 401 A.2d 1102, 1104 (N.J. Super. App. Div. 1979) ("Potential employers may well be encouraged to employ such aliens if they become aware of the alien's inability to lodge claims against them for wages or on account of injuries sustained.").

¶17.    Medina could very well have proven his claims against the defendants without presenting evidence of his status as an immigrant. And if Medina's claims of negligence were barred solely because he presumably was an undocumented immigrant, the same logic could be applied to any tortious or unlawful conduct towards Medina based on the conclusion that he was not lawfully in the country. Such reasoning would effectively strip Medina of all rights. *See Feldman v. Murray*, 12 N.Y.S.2d 533, 534–35 (N.Y. Sup. Ct. 1939) ("[E]ven the most hopeless outcast is entitled to protection against unlawful injury to his person."). We clarify that this Court's decision in *Price* does not prevent an undocumented immigrant from bringing a negligence claim against his employer.

## CONCLUSION

¶18.    Although we affirm the decisions of the Court of Appeals and trial court regarding summary judgments in favor of the defendants, we clarify this Court's position that an architect has no affirmative duty to supervise safety absent contract or conduct. Additionally, because our courts are open to every person, an alleged undocumented immigrant is not barred from tort recovery solely based on his alleged undocumented status, and we vacate the decision of the trial court on this issue. Because summary judgment was appropriate as

10

to all defendants, this error was harmless.

**¶19.    THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND VACATED IN PART.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, COLEMAN AND BEAM, JJ., CONCUR. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.**